THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CRAIG R. COOPER, Defendant-Appellant.

(No. 72-267;

Second District—March 15, 1974.

Raymond L. Jones and Henry A. Peterson, both of Chicago, for appellant.

William V. Hopf, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Following a jury trial, the defendant, Craig Cooper, was found guilty of the offense of unlawful delivery of cannabis (Ill. Rev. Stat. 1971, ch. 56½, § 705(d)) and sentenced to 3 years probation with the first 6 months to be served at the Illinois State Farm, Vandalia.

On appeal, defendant contends that the evidence established entrapment or, alternatively, that by finding no defense of entrapment, the jury's verdict was against the evidence; that the indictment was fatally defective, the indictment void in that the statute under which he stands convicted is unconstitutional; that the trial court erred in its rulings on certain evidentiary matters; and that the sentence is excessive.

In June of 1970, Joseph Taylor (informer) became an uncompensated agent for the Downer's Grove police. In August of 1971, while employed by Montgomery Ward Stores, he met defendant, another employee. They exchanged their Vietnam experiences and admitted to each other that they had smoked marijuana while there. (Defendant testified that he had not smoked marijuana since leaving Vietnam.)

On September 10, 1971, the defendant and the informer took an overextended dinner-break and were fired. There is a conflict between the testimony of the two regarding the substance of their conversation during dinner. The informer asserted that the defendant said he knew where they could find some "broads, booze and grass," to which he (the informer) responded, "fine, let's go." Defendant denied having made such statement and testified that it was the informer who had asked defendant if they could obtain some marijuana because he did not have enough money to continue drinking and defendant had responded by suggesting they go to the Nickel Bag where they could buy beer for 5 cents. On cross-examination, the informer affirmed that the defendant had suggested they go to drink nickel-beer. After dinner, the defendant and the informant went, in separate cars, to a discount tire store. According to the informer's testimony, it was while there that he called the Downers Grove police, informing Officer Niewold that he "was with a fellow named Cooper and that they were going to Brookfield and might come in contact with some marijuana." The two left the store and, in defendant's car, drove to the latter's home. The informer testified that during the ride defendant said he would call from his home to find out if they could buy some marijuana. At the home, there was an altercation between defendant's parents and the informer regarding the informer's conduct and state of intoxication and the informer was asked to leave. Defendant's stepfather would not allow defendant to use the car and the two were picked up by the defendant's girlfriend.

There is conflict, also, in testimony relating to conversation between the three that evening. The informer stated that when he asked the defendant if they were going to buy any marijuana, defendant responded that it was too late. Both the defendant and his girlfriend testified that marijuana was not mentioned during the course of the evening. The girlfriend further stated that, at the direction of the informer, she drove around for about 1½ hours, stopping at two houses which the informer indicated; that since no one was home at either house, the informer was, at his request, dropped off in Bolingbrook.

According to the informer's testimony, his interest in the defendant was prompted by his desire "to make a bust"; between September 10 and October 15, 1971, the two did not meet, defendant did not call, but on approximately six occasions between September 24 and October 15, he (the informer) called defendant, inquiring if the latter could get some marijuana; during the calls, defendant suggested he find someone else from whom to make the buy; when the informer stated that his usual contact was out of town, the defendant said he knew no one who had marijuana, but the informer was always told to call back. During the October 14 phone conversation, defendant said he could obtain some marijuana and the price per pound was $135; he asked if the informer could pay something in advance. Calling Sergeant Fulgaro to tell him that the "deal was on," the informer asked for money to make the buy, but his request was denied. The following day the informer called defendant to say he could not advance any money, was told "that was alright," and arrangements were made for the delivery to take place that evening at a drive-in restaurant. During the same conversation, defendant asked if the informer would be interested in the two forming a partnership for the purpose of distributing marijuana. The informer notified the Sergeant of the time and place for the delivery and when the two met as arranged, defendant was arrested for delivering cannabis.

Chemical analysis of the substance, introduced by stipulation, indicated the presence of cannabis and its resins in the amount of 410.28 grams.

■■■ Defendant first contends that the evidence was sufficient to establish entrapment as a matter of law. Entrapment, as defined by statute (Ill. Rev. Stat. 1971, ch. 38, § 7—12), is an affirmative defense (Ill. Rev. Stat. 1971, ch. 38, § 7—14) and, if established by the evidence, is a bar to conviction. (*People v. Dollen*, 53 Ill.2d 280, 283 (1972).) Whether entrapment exists is, ordinarily, a question to be decided by the jury, under proper instructions. To reverse a verdict as a matter of law, the evidence must disclose improper inducement on the part of the State and a lack of predisposition to commit the crime on the part of the

defendant. (*People v. Nahas,* 9 Ill.App.3d 570, 575 (1973).) The type and degree of the informer's conduct, alone, is not the sole determinative factor (*United States v. Russell,* 411 U.S. 423, 36 L.Ed.2d 366, 374-375, 93 S.Ct. 1637 (1973)); inquiry into defendant's conduct and predisposition is necessary. (See *People v. Dollen,* 53 Ill.2d 280, 283-284; *Sorrells v. United States,* 287 U.S. 435, 77 L.Ed. 413, 53 S.Ct. 210; 216 (1932); *Sherman v. United States;* 356 U.S. 369, 2 L.Ed.2d 848, 78 S.Ct. 819 (1958).) (Our statute on entrapment is derived from the *Sorrells* case. Committee Comments, S.H.A. ch. 38, § 7—12, p. 438 (1972).)

■■ Here, evidence relating to inducement consisted of the informer's initial requests to purchase marijuana from the defendant on the day they were both discharged from their employment, and the informer's six telephone calls (during which he was told to call back) requesting defendant to procure the drug and sell it to him because he needed it for a party. As to predisposition, evidence revealed not that defendant was reluctant, but that he had no immediate source. The source obtained, defendant not only delivered, but indicated a desire to establish a partnership for the distribution of the drug. This evidence does not establish that defendant was entrapped as a matter of law. Such conclusion is not altered by the fact that the State failed to show that defendant had ever in the past delivered marijuana for, while it may tend to negate predisposition, it is not, alone, determinative of the issue. *People v. Wells,* 25 Ill.2d 146; 149 (1962); *People v. Washington,* 81 Ill.App.2d 162, 171 (1967).

■■■ Defendant next contends that, on the issue of entrapment, the jury's verdict was contrary to the greater weight of the evidence. By invoking the defense of entrapment, a defendant admits commission of the crime charged. If some evidence on the issue of entrapment is raised, the State must prove, beyond a reasonable doubt, that defendant was not entrapped. (Ill. Rev. Stat. 1971, ch. 38, § 3—2(b).) Having found defendant was not entrapped as a matter of law, we further find that there was evidence by which the jury could conclude, beyond a reasonable doubt, that defendant was neither entrapped nor innocent of the charge brought. *People v. Gonzales,* 125 Ill.App.2d 225, 232-233 (1970).

■■ The defendant argues that the indictment was fatally defective in not charging him with violating a statute and relies on section 111—3(a)(2) of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, § 111—3 (a)(2)). The complained of "defect" was that the charges in the indictment were derived from a 1971 enactment but were erroneously designated as a 1969 statute. Such an error is merely a formal, nonjurisdictional defect and not grounds for reversal. (*People ex rel. Goznelli v. Brantley,* 49 Ill.2d 383 (1971).) The indictment set forth the nature

and elements of the offense charged and thereby gave defendant notice of the charge against him, enabled him to prepare his defense, and protect himself from subsequent prosecution for the same offense; this, under the circumstances, was sufficient to overcome any fatal error.

█ Defendant contends that the statute upon which the indictment is based is unconstitutional because the penalty is not determined by the actual amount of cannabis but by the amount of the substance containing cannabis. It is argued that, under the statute, a person delivering a bushel of sawdust weighing over 500 grams but containing only 1 gram of cannabis, would be guilty of committing a Class 2 felony, while a person delivering 1 gram of pure cannabis would be guilty of committing a Class B misdemeanor and that the resulting difference in penalties would be substantial. (Compare Ill. Rev. Stat., 1972 Supp., ch. 38, § 1005—8—1 (b)(3) and § 1005—8—3(a)(2).) The question of the constitutionality of a statute is properly preserved for review only when it has been raised and passed upon by the trial court. Since this was not done in the case at bench, the question is not subject to review in this appeal. *People v. Amerman,* 50 Ill.2d 196, 197 (1971); *People v. Luckey,* 42 Ill.2d 115, 117 (1969); *People v. Orr,* 10 Ill.2d 95, 97 (1956).

Defendant contends that the trial court erred in limiting defense counsel's cross examination, specifically: (1) by refusing to allow defendant to inquire into his conversation with the informer concerning the latter's bad conduct discharge and difficulty in finding a job; (2) in not permitting inquiries into the informer's marital status; (3) in limiting the inquiry as to the circumstances surrounding the informer's later employment by the village of Downers Grove; and (4) by disallowing general questions into the informer's background.

██ Our reading of the record reveals that during the cross-examination of the informer and direct examination of the defendant, defense counsel substantially established the informer's military background, his employment since service, his marital status and his employment with the village subsequent to defendants' arrest. Thus, the court's rulings during cross-examination of the informer, if erroneous, were not prejudicial. (*People v. Jones,* 26 Ill.2d 300, 304 (1962).) Defendant argues that since the informer admitted to the use of marijuana, defense counsel was entitled to inquire in depth into his background. No suggestion is put forth as to what defendant intended to establish by such means nor was an offer of proof made. Without citing a case in support, defendant asserts it to be the rule that wide latitude be allowed in the cross-examination of a witness. The extent of cross-examination, however, rests largely within the discretion of the trial court and "it is only a case of an abuse of such discretion resulting in prejudice to the defendant that a review-

ing court will interfere." (*People v. Bridgeforth*, 51 Ill.2d 52, 65 (1972).) We find no such abuse here.

■■ Defendant claims that he was prejudiced by the trial court allowing the State to cross-examine the defendant as to his source of marijuana. Where entrapment is the defense, the evidence of defendant's source of supply is probative of the issue of predisposition. (*People v. Hatch*, 49 Ill.App.2d 177, 188 (1964).) The fact that defendant did not have an immediate and direct source, as brought out by the testimony, could only serve to refute the State's claim that defendant was predisposed to commit the crime and therefore its admittance was beneficial rather than prejudicial to defendant. We therefore find no error in the inquiry into defendant's source.

■■ Finally, defendant claims that incarceration of 6 months in addition to 3 years probation is excessive. Defendant, aged 22, is gainfully employed as a communications technician; his present superior finds his conduct "beyond reproach"; he has no prior criminal record; he received an honorable discharge from the Air Force after serving more than 2 years, and the probation officer's report recommended probation. Considering this background as well as the circumstances surrounding the instant crime, we determine that the ends of justice will be served by modifying the sentence to 3 years probation.

As modified, the judgment in all other respects is affirmed.

Affirmed as modified.

GUILD, P. J., and SEIDENFELD, J., concur.