THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALLAN KADLEC, Defendant-Appellant.

(No. 73-172;

Third District—June 28, 1974.

Stephen Hurley, of the State Appellate Defender's Office, of Ottawa, for appellant.

William McMenamin, Assistant State's Attorney, of Joliet, for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

The defendant, Allan Kadlec, was convicted of delivery of a controlled substance on October 10, 1972, after a jury trial. He was sentenced by the Circuit Court of Will County to a term of 8 to 20 years. He appeals from that judgment contending:

1. That the trial court committed error in denying his motion for substitution of judge.
2. That the trial court erred in refusing to instruct the jury on entrapment.
3. That the trial court erred in refusing to allow the jury to determine the weight of the controlled substance which was delivered.
4. That the conviction is based on a statute which violates due process and equal protection of the law.
5. That the sentence is excessive and should be reduced.

On January 20, 1972, the defendant sold 300 amphetamine tablets to Agent Joseph Gryz of the Illinois Bureau of Investigation. Gryz told Kadlec that he would want to make other purchases in the future, to which Kadlec replied that he could be reached at a new address and the same telephone number. On January 28, 1972, Gryz purchased 1000 amphetamine tablets from Kadlec and inquired about 3 to 4000 tablets in the future. On February 3, 1972, Kadlec advised Gryz that he would attempt to get the pills and asked Gryz to call back in a week. On February 10, 1972, Kadlec advised Gryz that his "connection" had been arrested and that he would check for other sources. On February 17, 1972, the agent again telephoned defendant and was told by defendant that he had been arrested the prior day and that he would not be dealing for a while until things cooled off.

On February 23, 1972, defendant called the agent and left his telephone number. The agent called back and defendant informed him that he could obtain the quantity and a sale was arranged for the following day.

Agents met at IBI headquarters on the morning of February 24, 1972. Serial numbers of $500 of advanced funds were recorded and the money

dusted with fluorescent powder. Surveillance teams were arranged. It was anticipated that defendant would go to his supplier because Gryz would not telephone before going to Kadlec's house as agreed.

At 11:55 A.M. the agent arrived at the Kadlec house and he and defendant went into the basement. The defendant then left the basement and drove to the Marquis residence. Five minutes later he returned and gave the agent a paper bag which contained 4000 tablets of amphetamine. Agent Gryz gave the defendant $460. Gryz departed and defendant went back to the Marquis residence.

Agents Gryz, Petersik and Schissel went to the door through which Kadlec had entered the Marquis house. They were met at the doorstep by Marquis and Agent Petersik, who could see the defendant through the open door, led Marquis back inside the house and arrested both Marquis and the defendant. The money was recovered from Kadlec and a black light was shone on the hands of both men, revealing traces of fluorescent powder. While in the Marquis residence, Agent Petersik found a plastic bag containing about 400 amphetamine tablets.

The defendant and Marquis were taken to the Will County Jail. There the agents processed the evidence. Both the tablets which were obtained through the purchase and those found at Marquis' house were processed at the same table. The agents testified that the pills were not commingled.

The amphetamine was taken to the Joliet Crime Lab where Sandra Rodeghero, a specialist, tested it.

On May 10, 1972, an indictment was returned by the Grand Jury charging Kadlec and Marquis as co-defendants on the charge of delivering more than 200 grams of a controlled substance and charging Marquis with a separate count of possession. A severance was granted on motion of Kadlec. On September 7, 1972, Marquis was brought to trial and he waived jury.

On September 22, 1972, defendant testified on behalf of Marquis. On the same day Judge Pistilli found Marquis guilty of both charges. On October 3, 1972, defendant moved for a substitution of Judge Pistilli. The motion was denied. Defendant then revoked his jury waiver and was tried by a jury.

During the testimony of the first state witness the judge informed the defense attorney that he was not going to instruct on entrapment.

As to defendant's first contention, the law concerning substitution of judge in criminal cases is dealt with in section 114—5 of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, sec. 114—5). The motion for substitution in the instant case was filed more than 10 days after

the case had been placed on the judge's trial call. The petition came too late to qualify under sections 114—5(a) or (b).

Section 114—5(c) provides as follows:

"In addition to the provisions of subsections (a) and (b) of this Section any defendant may move at any time for substitution of judge for cause, *supported by affidavit.* Upon the filing of such motion the court shall conduct a hearing and determine the merits of the motion." (Emphasis supplied.)

The motion in the instant case was neither supported by affidavit nor verified in any fashion. In a similar case, *People v. West*, 80 Ill.App.2d 59, 63, the court said "* * * the trial court was justified in denying them." While it is true that lack of compliance might have justified a refusal of the court to entertain the motion, the deficiencies in the motion were not raised below and the procedural requirements of the statute appear to have been waived by court and counsel alike. See *People v. Hicks*, 44 Ill.2d 550, 556.

■■ The defendant was given a hearing on the merits of the motion, he presented no evidence but chose to rely on argument of counsel. The duty imposed on the trial judge by section 114—5(c) is to afford an opportunity to present evidence, not to insure that evidence is presented. *People v. Wolfe*, 124 Ill.App.2d 349.

Defendant tendered an instruction on entrapment which was refused on the ground that the testimony did not support the defense.

The question of whether there was illegal entrapment is generally for the jury, certainly at least, where the testimony of accused on its face, tends to support this defense or the evidence with respect to this defense is conflicting. But where the uncontradicted evidence discloses no entrapment it is not necessary to submit the matter to the jury. *People v. Cash*, 26 Ill.2d 595.

Entrapment is defined in section 7—12 of the Criminal Code. The Committee Comments thereto contain the following statement:

"* * * recognizing three principal elements:

(1) The idea of committing an offense originates, not with the suspect, but with the enforcing authorities, who

(2) actively encourage the suspect to commit the offense,

(3) for the purpose of obtaining evidence for his prosecution.

The first element involves two inquiries: Does the suspect originate the idea of committing this particular offense; and is he engaged in a course of conduct involving other offenses of the same type, or other acts of the same continuing offense if dealing with other persons? Even if the answer to the first inquiry is negative,

the person should not be considered worthy of protection if the answer to the second inquiry is positive, since he is not 'an innocent person', induced to commit an offense of a type which he would not otherwise commit."

It can be seen that there is no entrapment when the defendant was already engaged in an existing course of similar criminal conduct for the reason that he is not an "otherwise innocent person." *United States v. Jones,* 302 F.2d 46; *People v. Cooper,* 17 Ill.App.3d 934, 308 N.E.2d 815, 818.

■■ In the instant case the defendant's testimony showed that he had made two prior sales to the agent, that his supplier had been "busted" that he was "just going to stick with marijuana and hash—wasn't going to sell any more speed or anything like that," *and that he had sold to over 300 other people over the past year and a half.* The defendant was engaged in an existing course of similar criminal conduct. He was not an "otherwise innocent person." In other words, where a person is regularly engaged in doing certain prohibited acts such as unlawfully selling narcotics, and has done such acts on his own initiative, it is no defense for him to show that for the purpose of bringing him to justice, an officer of the law directly or indirectly occasioned the commission of the particular act charged. (21 Am.Jur.2d *Criminal Law* sec. 145.) The trial court properly refused to instruct the jury in regard to the law of entrapment.

The defendant contends that the trial court committed error by refusing to allow the jury to determine the weight of the controlled substance delivered for the reasons that the issue was raised on trial and further that when the grade or degree of the offense depends on the quantity, the specific amount (over 200 grams) is an essential element going to the substance of the felony.

People's instruction on the issues that the State must prove was IPI— Criminal 17.02 modified. It was objected to by the defense on the ground that it did not list the weight as an element of the offense as charged in the indictment. The People argued that weight is a material element for sentencing but not for the commission of the offense. The trial court agreed.

The defense tendered a form of verdict which would have allowed the jury to find the defendant guilty of delivery of less than 200 grams. This was refused on the ground that weight was not an issue.

The form of verdict given did not incorporate a finding as to weight.

Under the former Narcotic Drug Act the weight or quantity of drugs was normally not an issue—there was only one grade of offense. (*People v. Dollen,* 2 Ill.App.3d 567, 574.) This was reflected in IPI—Criminal *Narcotics* chapter 17.00.

Since publication of IPI—Criminal, the Narcotic Drug Act has been repealed and since August 16, 1971, the Controlled Substances Act (Ill. Rev. Stat. 1971, ch. 56½, par. 1100 *et seq.*) has become law. The applicable portion of that Act (par. 1401) was as follows:

> "* * * it is unlawful for any person knowingly to * * * deliver * * * a controlled substance. Any person who violates this Section with respect to:
>
> (a) the following controlled substances *and amounts* * * * is guilty of an offense and shall upon conviction be imprisoned in the penitentiary for not less than 10 years nor more than life, * * *.
>
> (6) 200 grams or more of any substance containing amphetamine * * *.
>
> (8)(d) any other amount of a controlled substance classified in Schedule III[1] is guilty of an offense and shall be imprisoned in the penitentiary from 1 to 8 years * * *." (Emphasis added.)

It may thus be seen that the highest grade or degree of this offense depends on the amount of 200 grams or more. 200 grams or more, then equalled a 10-year minimum sentence. Any amount less than 200 grams then equalled a 1-year minimum sentence. The former is now a Class 1 felony, the latter now a Class 3 felony.

The new 28 C.J.S. Drugs and Narcotics Supplement (issued April 1974), section 162, page 239, concludes, "* * * the specific amount possessed is an essential element going to the substance of the felony."

No recent Illinois case has come to our attention. However, *People v. Johnson*, 133 Ill.App.2d 818, would imply that the quantity delivered is a fact to be established when conviction of the highest degree of the crime is sought. In larceny cases where the grade or degree of the offense depends on value, value then becomes a material fact essential to establish the grade or degree of the offense and it has been stated that the jury should incorporate its finding in the verdict. (*People v. Harden*, 42 Ill.2d 301, 306.) *Harden* held, however, that where the burden of proof instruction contained the issue of value it was sufficient. Also see *People v. Kelly*, 66 Ill.App.2d 204.

■■ We believe that where, as here, a defendant is charged with knowingly delivering more than 200 grams of a substance containing amphetamine the quantity of 200 grams or more is an essential element going to the substance of the charge. It is an issue in the case to be decided by the jury under proper instructions.

---

[1] Paragraph 1208(b)(1) includes amphetamine.

The crime with which we are here concerned is that of "[U]nlawful delivery of a controlled substance." The crime is committed by the delivery of a controlled substance regardless of the amount thereof. The particular amount of the controlled substance relates only to the extent of the penalty which may properly be imposed.

When the State seeks the maximum penalty permitted by the statute, by alleging in the indictment the delivery of 200 grams or more (as in this case) it becomes incumbent not only to prove delivery of 200 grams or more but the issue (unless waived) must be presented to the jury.

Normally it is reversible error for the trial court to assume in the instructions that any fact necessary to establish the guilt of the accused has been proved, and so relieve the jury from its consideration, unless the same is expressly or tacitly admitted by the defendant. *People v. Wilson,* 84 Ill.App.2d 269, 275.

Other than "Function," "Cautionary," "Burden of Proof Generally," "Types of Evidence," only the following instructions were given to the jury:

> "The defendant is charged with the crime of Unlawful Delivery of a Controlled Substance. The defendant has pleaded not guilty.
> A person commits the crime of violating the Controlled Substances Act who knowingly delivers a Controlled Substance, to-wit: amphetamine.
> To sustain the charge of violating the Controlled Substances Act, the State must prove the following proposition:
> That the defendant knowingly delivered a substance containing amphetamine.
> If you find from your consideration of all the evidence that this proposition has been proven beyond a reasonable doubt, then you should find the defendant guilty.
> If, on the other hand, you find from your consideration of all the evidence that this proposition has been proved beyond a reasonable doubt, then you should find the defendant not guilty."

The jury returned the following verdict:

> "We the jury find the defendant Allan Kadlec, Guilty of Unlawful Delivery of a Controlled Substance."

■■ We are of the opinion therefore that the record shows defendant to have been convicted of "Unlawful Delivery of a Controlled Substance." The record, however, affords no basis for sentence for the higher grade of the offense.

Defendant has asked that we reduce his sentence under the powers given us by Supreme Court Rule 615(b)(4). Accordingly, we reduce

the sentence herein to a minimum of 2 years 8 months and a maximum of 8 years.

■■ Defendant also contends that he was convicted under a statute which violates due process and equal protection of the law. The question of the constitutionality of a statute is properly preserved for review only when it has been raised and passed upon by the trial court. Since this was not done in the case at bar, the question is not subject to review in this appeal. *People v. Amerman,* 50 Ill.2d 196, 197; *People v. Cooper, supra.*

As modified, the judgment in all other respects is affirmed.

Affirmed as modified.

SCOTT, P. J., and ALLOY, J., concur.