THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* BEN PHILLIPS, Defendant-Appellee.

(No. 60678;

First District (5th Division)—May 23, 1975.

530

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and John F. Brennan, Assistant State's Attorneys, of counsel), for appellant.

Dominic P. Gentile, of Barrington and Chicago, for appellee.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

The State appeals from an order sustaining defendant's motion to dismiss, contending a mistrial had been properly ordered and that it was error to bar a second trial.

Defendant was charged with the offense of contributing to the sexual delinquency of a child. (Ill. Rev. Stat. 1973, ch. 38, par. 11—5(a)(3).) The complaint was signed by Charles Payne, father of the alleged victim, Leslie Payne. It appears that because of technical problems with the recording equipment, the official transcript of proceedings on January 31, 1974, is incomplete. We note from the record here, however, that after a motion to continue was denied a bench trial commenced and the witnesses were sworn, following which the court entered the rule of exclusion but allowed Charles Payne to remain in the courtroom. The State then called Leslie Payne as its first witness. She was sworn and, as she began her testimony, defense counsel asked for a competency hearing.

The court then asked her several questions, from which it was determined that she was 15 years old and in second year high school. The transcript ends after these preliminary questions by the court, allegedly the result of a tape malfunction. It does appear, however, that later on January 31, 1974, over defendant's objection, the trial judge recused himself and declared a mistrial.

The case was next called for trial on April 4, 1974, before another judge, at which time defendant moved for dismissal on the ground that he had previously been placed in jeopardy on the charge in question. It was then determined that the tape of the January 31 proceedings was, in fact, incomplete and the parties agreed to attempt a reconstruction of the record thereof. Thereafter, the State filed, apparently without objection, a by-stander's record which consisted of a statement by the first trial judge as to the proceedings on January 31, 1974. The following pertinent portions of this statement concerned matters occurring in the morning of January 31, 1974, before the trial commenced:

"That in the course of the hearing on the question of another continuance for the People, a number of persons who were gathered around the bench made various remarks to the bench, including the arresting officers. These people, especially the said Charles C. Payne, and arresting officers, expressed displeasure with the Court for insisting on a thorough hearing before deciding the question of another continuance.

[O]n many occasions throughout said hearing, Charles Payne made a number of remarks which were inaudible to the court but which appeared to elicit approving smiles from those spectators around him.

That on one occasion the said Charles Payne, turning to the gentleman standing next to him before the bench, said 'Is he fixed?', making direct reference to and turning his head in the direction of the Court.

That on still another occasion during the hearing, the said Charles Payne, the complaining witness, did say, again alluding to the Court, 'He ought to disqualify himself', his facial expression reflecting utter disrespect and contempt.

That on many other occasions the said Charles Payne, the complaining witness, made other belittling and degrading remarks and jesticulations, i.e., while pointing his finger at the Court, said (in answer to a question put to him by the petitioner), 'Are you calling me a liar, Judge'?

That your petitioner represents that these remarks, and more, were heard and understood by your petitioner and that he, in the

interest of justice, chose to ignore same, denied the State's motion for another continuance and ordered the case held for trial."

Other aspects of the statement were concerned with what had occurred in the afternoon, after the trial commenced and the witnesses had been sworn, as follows:

"That the attorney for the defendant moved the Court to conduct a competency hearing as to the State's first witness, Leslie Payne, the daughter of the complaining witness.

That while the Court was conducting the competency hearing the aforesaid Charles Payne did again make insulting outcries, to wit: 'Why are you asking her those dumb questions, Judge? She's not on trial here. There is the guilty man', or words to that effect.

Upon resumption of the competency hearing, Charles Payne did again interrupt the proceedings and made derogatory remarks concerning justice or lack of it in these courts and 'can't get a fair trial in this court'.

Whereupon the Court imposed upon the State's Attorney Stanley Wilcox to request that his witness remain silent and upon his failure to so act, the Court admonished the complaining witness to the effect that it would not tolerate any further interruptions by him.

Your petitioner further represents that the presence of the aforesaid Charles Payne, together with some ten friends and relations of the complaining witness, sitting and standing in the chambers, appeared to the Court to encourage the said Charles Payne to 'play the gallery' thereby attempting to make a complete mockery of this Court.

Finally, your petitioner, upon due deliberation, and considering the remarks made by the complaining witness Charles Payne in the a.m., together with the utterances and interruptions during the actual trial in the p.m., did in the interest of fair and impartial justice, recuse itself and declare a mistrial."

Judge Breen, presiding at the second trial, having the benefit of the incomplete transcript, the bystander's record, and after having heard arguments, granted defendant's motion to dismiss, and the State appeals that ruling.

OPINION

■■ The Fifth Amendment to the Federal Constitution provides that "* * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *."[1] Article 1, section 10

---

[1] The Federal Constitution's prohibition against double jeopardy is binding on the States by virtue of the fourteenth amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 23 L.Ed.2d 707, 89 S.Ct. 2056.

of the Illinois Constitution of 1970 states that "No person shall * * * be twice put in jeopardy for the same offense." The Illinois Criminal Code implements this protection as follows:

"A prosecution is barred if the defendant was formerly prosecuted for the same offense, based upon the same facts, if such former prosecution:

(3) Was terminated improperly * * * in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of facts * * *."

Ill. Rev. Stat. 1973, ch. 38, par. 3—4(a).

■■ In order to interpret these constitutional rights and their codification in our Criminal Code, we turn to the United States Supreme Court's decisions in similar cases. That court has recognized that the double jeopardy clause is designed to protect persons accused of crimes from being forced to go through a trial more than once. (*United States v. Jorn*, 400 U.S. 470, 27 L.Ed.2d 543, 91 S.Ct. 547.) However, a mistrial is not a bar to a second prosecution when manifest necessity or the interests of public justice require it. (*United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165.) As the court stated in *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974, 978, if the double jeopardy clause barred a retrial in every case where a mistrial had to be declared, "* * * the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again."

■■ Thus, we must determine whether the mistrial here was manifestly necessary or required in the interests of public justice. Initially, we note that the trial court is to exercise sound discretion in deciding whether a mistrial ought to be declared (*Perez, supra*), concerning which it was stated in *Perez*, at page 580: "* * * the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes;" and in *Gori v. United States*, 367 U.S. 364, 368, 6 L.Ed.2d 901, 904, 81 S.Ct. 1523, that it can be used "* * * for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision."

In *Illinois v. Somerville*, 410 U.S. 458, 469, 35 L.Ed.2d 425, 434, 93 S.Ct. 1066, the court said that *Jorn, supra*, involved a situation where "* * * there was no 'manifest necessity' for the mistrial, as opposed to less drastic alternatives." Reading *Somerville's* interpretation of *Jorn* together with *Downum v. United States*, 372 U.S. 734, 10 L.Ed.2d 100, 83 S.Ct. 1033, it appears that if means short of aborting the trial will relieve the difficulty, a mistrial is not "manifestly necessary." In *Downum*, the trial court declared a mistrial because a key government witness

could not be located; in *Jorn,* the trial court aborted the trial to allow the government's witnesses to consult their attorneys concerning possible self-incrimination by their testimony against the defendant. In both cases the Supreme Court, suggesting that a continuance rather than a mistrial could have resolved the problem, found that there was no "manifest" (*Jorn,* at 487) or "imperious" (*Downum,* at 736) necessity to declare the mistrial and that therefore the double jeopardy clause barred reprosecution. In *Somerville,* by contrast, the indictment was fatally defective and could not be amended; further, the defect could not be waived by defendant's failure to object and, being jurisdictional, it could be attacked at any time by a writ of habeas corpus or a post-conviction petition. Thus, any guilty verdict would have been vulnerable to reversal. In these circumstances, the court held that:

> "[W]here the declaration of a mistrial implements a reasonable state policy and aborts a proceeding that at best would have produced a verdict that could have been upset at will by one of the parties, the defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice." 410 U.S. 458, 471, 35 L.Ed.2d 425, 435.

■■ It would seem that where the original trial is sufficiently flawed or defective that a conviction would probably be reversed on appeal, public justice requires that a mistrial be declared. On the other hand, if the problem could have been adequately corrected short of aborting the proceeding, such that a guilty verdict would be reasonably supportable on appeal, neither manifest necessity or the ends of public justice require a mistrial, and the granting thereof, being improper, bars further prosecution as violative of the double jeopardy clause.

The order declaring the mistrial in this case gave no clear reasons therefor. The bystander's record of the first trial judge, after recounting the remarks and conduct of Payne and other persons in court, as set forth above, states only the following as cause for the mistrial:

> "20. Finally, your petitioner, upon due deliberation, and considering the remarks made by the complaining witness Charles Payne in the a.m., together with the utterances and interruptions during the actual trial in the p.m., did in the interest of fair and impartial justice, recuse itself and declare a mistrial."

We cannot say that this statement demonstrates the manifest or imperious necessity which the cases discussed above require to justify a mistrial. Whatever the effect of Payne's conduct on the proceedings, it seems clear that this case presents an analog to the situations in *Jorn* and *Downum, supra,* in that the irregularity which occurred here could have been corrected without aborting the trial. Payne could have been ex-

cluded from the courtroom, held in contempt, or both. Indeed, as stated in 14A I.L.P. § 505 (1968):

> "A trial judge has ample power to enforce order in the courtroom and it is his duty to do so  *  *  *  spectators should not be permitted to manifest their prejudice or partisanship  *  *  *  and, if such conduct is repeated after a warning by the court, necessary means should be resorted to to preserve order." (Footnotes omitted.)

Furthermore, since the attacks on the judge began before the trial commenced, there was sufficient opportunity to control the behavior and restore a proper judicial atmosphere before the point in the trial at which jeopardy had attached. The entire problem before us, in short, could have been avoided, and both the State and defendant could have been given a fair and orderly trial if action had been taken before any witness was sworn.

■■ We do not, of course, question that judge's good faith belief that he was required to recuse himself, but we think that the Standards of Judicial Conduct (Ill. Rev. Stat. 1973, ch. 110A, par. 61 *et seq.*) promulgated by the Illinois Supreme Court, indicate a different course of conduct. "It is the duty of a judge to hear and decide all matters regularly assigned to him except in those cases in which he has a conflict of interest." (Ill. Rev. Stat. 1973, ch. 110A, par. 61(c)(7).) Those standards make clear that the judge's duty in cases such as this one is to hear and decide, impartially and fairly, the case assigned to him, refusing to be influenced or biased, or even to give the appearance of having been influenced or biased, rather than to recuse himself. Following that course would have preserved the defendant's "valued right to have his trial completed by a particular tribunal" (*Wade,* 336 U.S. 684, 689) and would also have maximized efficient administration of criminal justice.

Finally, from the record presented, we cannot say that Payne's remarks and conduct would have required a verdict of guilty to be reversed on appeal, thereby frustrating the ends of public justice. (See *Somerville, supra.*) Indeed, absent a specific statement of how Payne's behavior affected the fairness or impartiality of the trial, we have no way of knowing whether the judge recused himself and declared the mistrial simply to avoid further difficulties with Payne. For all of these reasons, we conclude that the mistrial was neither manifestly necessary nor in the interests of public justice, and double jeopardy therefore bars reprosecution. The order dismissing this cause is therefore affirmed.

Affirmed.

BARRETT, P. J., and DRUCKER, J., concur.