THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DERRICK WARD, Defendant-Appellant.

First District (4th Division)   No. 77-788

Opinion filed November 22, 1978.

Ralph Ruebner and Kenneth Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Rimas F. Cernius, and James M. Thunder, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Defendants, Derrick Ward and Anthony Taylor, were charged with

burglary (Ill. Rev. Stat. 1975, ch. 38, par. 19—1) and two counts of armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—2). They were tried together before the Honorable Albert S. Porter in the circuit court of Cook County. The trial court acquitted Taylor, but the jury found Ward guilty of burglary and both counts of armed robbery. He was sentenced to serve 4 to 6 years with the Department of Corrections. Defendant Ward appeals and we affirm.

The issues presented for review are (1) whether, under the circumstances, defendant was proved guilty of burglary and armed robbery beyond a reasonable doubt, and (2) whether the refusal of the trial court to grant defendant's motion for a mistrial, after certain items which had been exhibited to the jury were suppressed by the trial court, deprived defendant of a fair trial.

The record reveals the facts to be as follows. On August 16, 1975, at approximately 8 a.m., the complainant, George White, was returning to his 15th floor apartment located at 1410 West 14th Street in Chicago. White testified that as he exited the elevator he was accosted by a young man carrying a shotgun and wearing a ski mask or "skull cap" over his face. The assailant said, "This is a stickup," and ordered White into his apartment. The assailant was described as 5 feet 8 inches in height, with a slim build. He wore a midi-length denim coat, dark trousers, and no shirt. White stated that the young man wore peculiar shoes with black and white layered soles.

Mrs. White testified that she was sleeping when she heard noises and went to the bedroom door. She was immediately stopped by a man with a gun who was wearing a mask over his face, dark pants and a dark maxi-length coat. She was ordered to return to bed and to place her head in a pillow. However, she was able to observe her young assailant several times as he entered and exited the bedroom. She noticed that his hair was braided. Mrs. White also observed a second man who was approximately 5 feet 8 or 9 inches in height and of medium build. She later saw one of the men carrying items out of the apartment.

After the robbery, Mr. White went to the office of the Chicago Housing Authority security guards located in another building. In the meantime, Mrs. White followed the two men to apartment 1310 in her building. The one man was still wearing his ski mask. She observed them carrying stolen items in their hands. A woman's voice from inside apartment 1310 said, "Hurry up; come on in." Then the door locked behind the two men. Mrs. White then returned to her apartment where she called her husband at the security office and reported what she had seen. She then returned to the 13th floor where she was joined by her husband and three security guards. Chicago police officers arrived approximately 15 to 20 minutes later. She told them that no one had entered or departed from apartment 1310 during the time she had been there.

The complainant, the guards, and police officers entered the apartment where they observed two males, several females, and a baby. At trial, White identified the two defendants as the two males found in the apartment. Defendant Ward wore a natural hairdo with many parts in it. He identified defendant Ward, due to his distinctive shoes, as the assailant who had robbed him at gunpoint. He also observed items taken from his apartment: a stereo, a turntable, a television, a tape player, a calculator, and watches. Mrs. White identified the pants worn by Taylor when he was found in apartment 1310 as the same light green pants worn during the robbery.

Officer Strzepka testified that he and his partner, Officer Kent, arrived on the scene at approximately 8:30 a.m. and spoke with Mrs. White. They were able to enter apartment 1310 at 10 a.m. Inside they found two males and four females, including the defendants. These individuals were all placed under arrest. The complainant and his wife then entered the apartment and identified certain items as their personal property. The officer then testified that People's Exhibit No. 1 was the same shotgun found in apartment 1310.

At that point in the trial, the jury was excused while an offer of proof was given with respect to where the gun was found. The trial court permitted defendant Ward to make his motion to suppress. After hearing evidence on the motion, the court granted the motion with respect to the gun, watches, calculator, and iron, finding that these items were not found in plain view, but denied the motion as to the other items also identified by complainant and his wife as having been taken from their apartment. Defendant Ward then made a motion for mistrial, stating that the gun had been displayed to the jury. The motion for mistrial was denied. The trial judge instructed the jury to disregard any reference to the suppressed items found in apartment 1310.

The jury found defendant Ward guilty of burglary and of the armed robbery of the complainant and his wife. The trial court made a finding of not guilty as to defendant Taylor. Defendant Ward's motions for a judgment notwithstanding the verdict and for a new trial were denied.

The defendant argues on appeal that the trial court erred in denying his post-trial motions where, as a matter of law, a reasonable doubt existed as to his guilt, and his co-defendant was acquitted on substantially the same evidence. He also maintains that he was denied a fair trial due to the failure of the trial court to grant a mistrial after items of evidence later suppressed had been exhibited to the jury. We disagree.

■■ ■ Defendant Ward was found in the same apartment wherein the stolen goods were recovered; he was found in the apartment entered by the two assailants followed by Mrs. White. The weight to be given this circumstantial evidence was for the determination of the trier of fact.

(*People v. Mitchell* (1975), 35 Ill. App. 3d 151, 157, 341 N.E.2d 153, 158.) In the instant case, this evidence was coupled with the fact that defendant was found still wearing the distinctive shoes observed during the robbery, and that his hair contained many parts as though it had recently been braided. The identification of distinctive clothing worn by a defendant may be sufficient to sustain his conviction, particularly when other evidence of guilt exists, and a positive facial identification is not required. (See *People v. Williams* (1977), 66 Ill. 2d 478, 363 N.E.2d 801; *People v. Rogers* (1975), 31 Ill. App. 3d 981, 335 N.E.2d 48; *People v. Brooks* (1973), 13 Ill. App. 3d 1003, 301 N.E.2d 496; *People v. Christiansen* (1969), 118 Ill. App. 2d 51, 254 N.E.2d 156.) A review of the evidence reveals that the testimony of the State's witnesses was credible in that it was positive on all material matters, unshaken on cross-examination, and not so unreasonable or improbable as to be unworthy of belief. (*People v. Guido* (1962), 25 Ill. 2d 204, 209, 184 N.E.2d 858, 860.) The trier of fact was not required to believe the testimony of any defense witnesses. (*People v. Lofton* (1977), 49 Ill. App. 3d 559, 561, 364 N.E.2d 584, 586.) It is the duty of the trier of fact to determine the credibility of the witnesses and the weight to be given their testimony, and, on review, this court will not substitute its judgment for that of the trier of fact. *People v. Coulson* (1958), 13 Ill. 2d 290, 295-96, 149 N.E.2d 96, 98.

We find the defendant's claim that reasonable doubt as to his guilt exists because his co-defendant was acquitted to be without merit. The law is established that if there is any difference in the evidence adduced against defendants, as in the instant case, the fact that one defendant is convicted and the other acquitted does not raise a reasonable doubt as to the guilt of the convicted defendant. *People v. Taylor* (1974), 25 Ill. App. 3d 396, 403, 323 N.E.2d 388, 393.

■■■ Finally, the decision to grant or deny a mistrial is within the sound discretion of the trial court. (*People v. Phillips* (1975), 29 Ill. App. 3d 529, 533-34, 331 N.E.2d 163, 166.) A mistrial should be declared only with great caution, under urgent circumstances, and only where any guilty verdict which might be rendered would most likely be reversed if appealed. (*Phillips*, at 534.) Here, in view of the cumulative evidence against the defendant adduced at trial, exclusive of the offending shotgun, we cannot find that the trial court in anyway abused its discretion when it refused to grant defendant's motion for a mistrial.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN and ROMITI, JJ., concur.