THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GEORGE WOLFF, Defendant-Appellant.

Third District    No. 77-329

Opinion filed August 29, 1979.

Samuel J. Andreano, of Schenk, Andreano, Duffy, Quinn, McNamara & Phelan, of Joliet, and James Geis, of Geis & Geis, of Chicago, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The defendant, George Wolff, was charged by information with unlawful possession of a controlled substance in violation of section 402(a)(8) of the Illinois Controlled Substances Act. (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(a)(8).) Following a jury trial in the circuit court of Will County, defendant was found guilty of possession of more than 30 grams of a controlled substance, lysergic acid diethylamide, and sentenced to not less than four nor more than six years in the penitentiary.

On appeal, defendant contends (1) that the trial court erred in ruling that as a matter of law evidence of prior criminal activity barred the defendant from submitting his entrapment defense to the jury, (2) that the trial court erred in refusing to allow the defendant to testify to the substance of certain out-of-court conversations on the ground that such testimony would constitute hearsay, and (3) that the trial court erred in denying the defendant's motion requesting a transcript of the evidence at a previous mistrial.

At trial, Officer Joseph Andalina, a patrolman with the Bolingbrook Police Department assigned to the Metropolitan Area Narcotics Squad, testified that on September 13, 1976, he proceeded to execute a previously conceived plan to have Steven Bean, whom he had not told he was a police officer, purchase 2,000 tablets of LSD from the defendant for $2,020. Officer Andalina gave Bean $1,010 of prerecorded money and sent him into the defendant's apartment to purchase the tablets. He explained that he would give Bean the other half of the money when he received the pills. When Bean came out of the defendant's apartment and delivered 1,000 tablets, Andalina arrested him. Officer Andalina and several other police officers then executed a search warrant by breaking down the door to the defendant's apartment, where they saw Wolff and another man.

On cross-examination, Officer Andalina testified that on September 1, 1976, he had sent a "subject" to the defendant's apartment to purchase some LSD tablets and the subject purchased "way under 30" grams. Andalina further testified that on September 8, 1976, he had sent a different "subject" to Wolff's apartment for the same purpose and the second "subject" also purchased "way under 30" grams of LSD. No arrests were made on either occasion and Officer Andalina identified neither "subject" by name.

Testifying in his own behalf, defendant George Wolff admitted that he was responsible for the possession of the approximately 2,000 tablets of LSD that were found at the time of his arrest. He stated that he normally maintained up to 100 such pills for his own use and that the additional quantity was obtained for Steven Bean and Jerry Kruba. Wolff further testified that the idea to acquire and possess the additional

quantity of LSD came to his head for the first time after a conversation with Jerry Kruba on September 1, 1976, but that he had not agreed to acquire the tablets until the day of his arrest.

The trial court refused to allow the defendant to relate the substance of the September 1, 1976, conversation with Jerry Kruba on the ground that such testimony would constitute hearsay. On the same ground, the trial court refused to permit the defendant to testify to the fact and substance of subsequent conversations with Jerry Kruba and Steven Bean between September 1, 1976, and September 13, 1976. In an offer of proof, Wolff stated that on September 1, 1976, Kruba came by his house to pick up some pills from Bean and at that time Kruba asked him to get a "couple thousand hits" of LSD but that he refused. In a further offer of proof, the defendant stated that subsequent to September 1, 1976, Kruba and Bean repeatedly requested that he obtain a "couple thousand" pills and that he refused until finally agreeing to do so on September 13, 1976, the date of his arrest.

During the conference on jury instructions, the defense tendered the IPI Criminal instructions for entrapment, but the trial court refused to give them, stating that as Officer Andalina testified to two prior drug transactions where sales were made, the evidence was not sufficient to permit the entrapment instruction to go to the jury.

The first issue to be considered is whether the trial court properly denied defendant's tendered jury instruction on entrapment. The defendant argues on appeal that testimony of prior criminal activity does not bar the defense but instead creates a question of fact for the jury's determination.

The Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 1—1 *et seq.*) defines entrapment as follows:

"A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated." (Ill. Rev. Stat. 1975, ch. 38, par. 7—12.)

In the Committee Comments to this provision, it is stated:

"Section 7—12 states the defense of entrapment in general terms in essentially the language which the Illinois Supreme Court has used in cases citing with approval the Sorrells case. [*Sorrells v. United States*, 287 U.S. 435, 53 S. Ct. 210, 77 L. Ed. 413 1932.]" Ill. Ann. Stat., ch. 38, par. 7—12, Committee Comments, at 439 (Smith-Hurd 1972).

■■ *Sorrells* and *Sherman v. United States*, 356 U.S. 369, 2 L. Ed. 2d 848, 78 S. Ct. 819, underlie the widely accepted "subjective" or "origin of intent" formulation of the law of entrapment continuously recognized by a majority of the United States Supreme Court. Under this formulation, there are two factors to be considered in determining whether entrapment has occurred: (1) whether the defendant was induced to commit the offense by a government official or someone working with a government official, and (2) whether the defendant was predisposed to commit the type of offense involved. (*People v. Spahr* (1978), 56 Ill. App. 3d 434, 437, 371 N.E.2d 1261, 1264; *People v. Gulley* (1976), 36 Ill. App. 3d 577, 582, 344 N.E.2d 567, 572.) As stated by Mr. Chief Justice Warren:

> "To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal." *Sherman v. United States* (1958), 356 U.S. 369, 372, 2 L. Ed. 2d 848, 851, 78 S. Ct. 819, 821.

Defendant Wolff testified at trial that he normally possessed up to 100 tablets of LSD for his own use and thereby admitted his own predisposition to possess the controlled substance. Additional evidence of this predisposition was the uncontroverted testimony of Officer Andalina that small quantities of the drugs were successfully purchased from the defendant by his "subjects." Our review of the record reveals no evidence, offered or admitted, that the defendant's established predisposition to possess the controlled substance was in any way induced by a government official or his agent. Thus evidentiary support of either factor determinative of entrapment is entirely absent.

■■■ Where the uncontradicted evidence discloses no entrapment and no question of fact is therefore presented, it is not necessary to submit the defense to the jury. (*People v. Cash* (1963), 26 Ill. 2d 595, 598, 188 N.E.2d 20, 22; *People v. Kadlec* (1974), 21 Ill. App. 3d 289, 293, 313 N.E.2d 522, 526; *People v. Carpentier* (1974), 20 Ill. App. 3d 1024, 314 N.E.2d 647, 649.) Therefore the trial court properly refused to instruct the jury regarding the law of entrapment in the case at bar.

■■ The defendant contends that he was entitled to submit his defense to the jury as he had no predisposition to possess more than 30 grams of LSD. Relying on the *Kadlec* decision as authority, he bases this contention on the assertion that possession of more than 30 grams of a controlled substance is a different offense than possession of less than 30 grams. In *Kadlec*, the court indicated that when the People seek a statutory penalty dependent on the amount of a controlled substance, that amount must be proven to the satisfaction of the jury, but added the following clarifying language:

> "The crime with which we are here concerned is that of '[U]nlawful delivery of a controlled substance.' The crime is

committed by the delivery of a controlled substance regardless of the amount thereof. The particular amount of the controlled substance relates only to the extent of the penalty which may properly be imposed." (*People v. Kadlec* (1974), 21 Ill. App. 3d 289, 296, 313 N.E.2d 522, 527-28.)

As the particular amount of a controlled substance possessed similarly relates only to the extent of the penalty which may be properly imposed, we find the defendant's contention without merit.

As evidence offered, as well as evidence admitted, has been considered in our discussion of defendant's first point of error, we need not reach the question of whether the trial court erred in refusing to allow the defendant to testify to the substance of certain out-of-court conversations on the ground that such testimony would constitute hearsay.

The final issue presented is whether the trial court erred in denying defendant's motion for a transcript of a previous mistrial. The defendant contends on appeal that where there has been a mistrial, a defendant is entitled to a copy of the transcript, free of charge if he cannot afford one, to aid him in the preparation of his second trial. The trial court denied defendant's motion as it was deemed untimely and granting it would delay trial.

■ Where a defendant has been deprived of the equal protection of the laws and the same fair trial that a defendant with funds would have obtained, the denial of a motion requesting a complete transcript of a mistrial has been held reversible error. (*People v. Miller* (1966), 35 Ill. 2d 615, 221 N.E.2d 653; *People v. Delafosse* (1967), 36 Ill. 2d 327, 223 N.E.2d 125). In the case at bar, the defendant does not contend that he has been deprived of the equal protection of the law nor does the record suggest that this is the case. Our examination of the record further indicates that the free transcript was not needed by him to vindicate any legal right (see *People v. Carroll* (1973), 12 Ill. App. 3d 869, 877, 299 N.E.2d 134, 140), and the defendant does not now indicate any material discrepancy in the testimony of any witness. The defendant's motion was made on the eve of his second trial and, under the circumstances here present, we would not say the trial court erred in refusing his motion on the ground it was untimely and would delay trial. See *People v. Hudson* (1972), 7 Ill. App. 3d 333, 337-38, 287 N.E.2d 297, 301.

Accordingly, the judgment of the circuit court of Will County is hereby affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.