THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MATTHEW OMATTO, Defendant-Appellant.

Third District    No. 79-798

Opinion filed September 12, 1980.

Francis A. Dunn, of Dunn, Leinenweber & Dunn, of Joliet, and James W. Reilley and Barry E. Witlin, both of Chicago, for appellant.

Edward Petka, State's Attorney, of Joliet (John X. Breslin and Rita Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

The defendant Matthew Omatto was convicted in the Circuit Court of Will County following a jury trial of delivery of over 30 grams of cocaine (a Class X felony), possession of less than 30 grams of cocaine (a Class 3 felony), and possession of between 30 and 500 grams of cannabis (a Class 4 felony). He was sentenced to concurrent terms of imprisonment of 12 years, two years, and one year for each crime respectively. The defendant appeals from the judgment and the sentences imposed thereon.

On appeal the defendant has raised three issues for our consideration:

    1. Whether the defendant was proved guilty beyond a reasonable doubt in view of his raising an affirmative defense of entrapment and the lack of proof beyond a reasonable doubt that there was no entrapment.

    2. Whether the trial court erred in denying defendant's motion for a mistrial, when a police officer referred to heroin in his testimony, a drug which was not involved in the crimes charged.

    3. Whether the defendant's background rebuts the presumption that the sentence imposed by the trial court was proper.

At the outset, we note that the State has filed a motion to strike the defendant's statement of facts because it is argumentative in violation of Supreme Court Rule 341(e)(6) (Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(6)), which motion was taken with this case. The defendant has conceded a certain aspect is argumentative and himself has moved to strike that portion, and accordingly the State's motion to strike the entire statement of facts of defendant is denied. The defendant's motion to strike the admitted offensive portion is allowed.

The defendant was convicted of all the offenses from which he appeals as a result of a drug sale to Metropolitan Area Narcotics Unit (M.A.N.S.) agent Drew Peterson in the defendant's home on December 21, 1978. The sale was of 55.7 grams of cocaine for a price of $3,600. Agent Peterson was wired with a body microphone, and the conversation that took place during the sale was recorded and admitted into evidence. Equally as damaging to the defense were the authorized recordings of two telephone conversations between the defendant and Agent Peterson. The defendant does not dispute the alleged delivery of cocaine on the day

in question nor apparently the facts supporting the other two charges against him. His theory of defense is entrapment. The defendant was introduced to undercover M.A.N.S. Agents Peterson and Stahl by David Bogdan, who was a police informant. Bogdan had known the defendant Omatto and his family since childhood and was a social acquaintance of defendant during the time of this investigation and the drug sale which resulted in defendant's arrest. Bogdan introduced Agent Peterson to the defendant. At the trial Bogdan was called as a court's witness and testified that the defendant had approached him and asked if he knew anyone who wished to buy cocaine. Thereafter Bogdan ultimately succeeded in introducing M.A.N.S. Agent Peterson to defendant. The defendant, on the other hand, testified that Bogdan had solicited him and sought to obtain cocaine from defendant for a friend four or five times. The defendant admitted that he supplied cocaine as a favor at parties and that on Halloween he obtained some for Bogdan and himself and they shared it. He readily admitted that he had sold cocaine to his friends as often as weekly in gram quantities. He admitted that certain drug paraphernalia introduced into evidence belonged to him and specifically that he had purchased the scales used in the instant drug transaction from a girl for a gram of cocaine. However, he claimed that he had told Bogdan in March of 1978 that he was getting out of the "business of selling drugs."

■■ A three-part test must be applied in determining whether an entrapment has occurred.

> "For an entrapment to exist, (1) the idea of committing the offense must originate not with the suspect but rather with the enforcement authorities; (2) the enforcement authorities must actively encourage the suspect to commit the offense; and (3) the purpose of the encouragement must be to obtain evidence for the prosecution of the suspect. The first part of the test involves two inquiries: First, does the suspect originate the idea of committing the offense; and second, is the suspect engaged in a course of conduct involving similar offenses, or other acts of the same offense if dealing with other persons. ' "Even if the answer to the first inquiry is negative, the person should not be considered worthy of protection if the answer to the second inquiry is positive, since he is not 'an innocent person', induced to commit an offense of a type which he would not otherwise commit." ' *People v. Kadlec* (1974), 21 Ill. App. 3d 289, 293-94, 313 N.E.2d 522, 526 (quoting Ill. Ann. Stat., ch. 38, par. 7—12, Committee Comments—1961, at 437-38 (Smith-Hurd 1972)); see *People v. Jensen* (1976), 37 Ill. App. 3d 1010, 347 N.E.2d 371; *People v. Lewis* (1967), 80 Ill. App. 2d 101, 224 N.E.2d 647."

(*People v. Fisher* (1979), 74 Ill. App. 3d 330, 333-34, 392 N.E.2d 975, 978.)

The defendant's admitted immediate past of selling cocaine to his friends and regularly supplying gram quantities of cocaine is sufficient to preclude him from being worthy of the protection afforded by the entrapment defense. Entrapment is not available to one such as this defendant, who has demonstrated a predisposed intent to commit the crime charged and does so merely because the police, for the purpose of securing evidence, afford him the opportunity for committing a criminal act. (*People v. Villanueva* (1977), 46 Ill. App. 3d 826, 361 N.E.2d 357.) The facts of the case at bar are similar to those in *People v. Wolff* (1979), 75 Ill. App. 3d 966, 394 N.E.2d 755 (where defendant was shown to be predisposed to commit the crime charged), and *People v. Kadlec* (1974), 21 Ill. App. 3d 289, 313 N.E.2d 522 (where the defendant was shown to be engaged in an existing course of similar criminal conduct). As in *Wolff* and *Kadlec*, we believe this defendant is not an "otherwise innocent person" and the defense of entrapment is not available to him. Defendant has mistakenly relied upon the case of *People v. Fisher*, which is readily distinguishable in that Fisher was not engaged in an existing course of similar criminal conduct as Omatto was. The defense of entrapment was not raised by sufficient evidence in the case at bar, and the defense motions for a directed verdict at the close of the State's evidence and again at the close of all the evidence were properly denied. We believe the defendant's guilt of the offenses charged was proved beyond a reasonable doubt.

■■■ The second issue presented by the defendant is whether a motion for a mistrial was erroneously denied. At trial Officer Peterson described some of the drug paraphernalia seized from the defendant's premises. These included a crucible and a mallet. Peterson testified: "[T]he mallet is used basically to place narcotics, cocaine, or heroin, or whatever, into the crucible and with the mallet * * *." Because defendant's drug related charges did not involve heroin a defense motion for a mistrial was immediately made. The trial court denied the motion, but did order the reference to "heroin" stricken and instructed the jury to disregard the statement. Defendant has not referred us to any authority justifying the declaring of a mistrial under the facts before us. The granting of a mistrial rests in the sound discretion of the trial court. Only when an abuse of discretion is shown will the trial court's action be reversed. To show an abuse of discretion the defendant had to establish that he was prejudiced by the comment complained of and the denial of his motion for a mistrial. (*People v. Huston* (1977), 46 Ill. App. 3d 170, 360 N.E.2d 986.) A mistrial should only be declared under urgent circumstances and where any guilty verdict which might be rendered would most likely be reversed if appealed. (*People v. Ward* (1978), 66 Ill. App. 3d 690, 384 N.E.2d 110.) The defendant has not proved that he was prejudiced in this case. The

evidence of his guilt was overwhelming and the unintentional isolated reference to another contraband substance was certainly not reversible error. (*People v. Douglas* (1978), 58 Ill. App. 3d 149, 373 N.E.2d 1385.) We find no reversible error in the denial of defendant's motion for a mistrial.

The third area of appellate inquiry in this case concerns the concurrent sentences imposed upon defendant Omatto, the most lengthy of which was 12 years for the one Class X felony of which he was convicted. Under the authority of *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670, there is a rebuttable presumption that the sentence imposed in this case was proper. Defendant Omatto had no prior convictions and came from a good family background. In aggravation the defendant was convicted of three separate drug charges and admitted an extensive past history supplying drugs, and a profit motive in doing so. However, the determining factor as to the propriety of the sentences was expressed by the trial judge in a special supplemental hearing after sentencing the defendant. We believe the evidence presented at the special hearing effectively rebuts the presumption that the sentences were proper.

The trial court received correspondence from the defendant seeking the court's assistance in obtaining a transfer from the maximum security prison where he was housed to a minimum security one. The trial judge inquired of the Department of Corrections and learned the criteria for placing a convicted felon in a maximum security facility rather than a minimum security one. For the record the trial judge convened the special hearing and made the following statement which we believe to be determinative on this issue:

"Mr. Omatto had made a request that I do something to avoid his incarceration in a maximum security facility. I contacted the Warden's Office who then gave me the name of another gentleman, who then gave me the name of a gentleman in Springfield by the name of Jennings, I believe it is. I was advised by Mr. Jennings from Springfield, that, apparently, the criteria between maximum and minimum security is not the history, the background, or the conduct of the Defendant prior to or after his incarceration, but rather the length of time the sentence was given for. If the Court had been aware at the time of the sentencing hearing that the difference between maximum and minimum security was to be based on the sentence given by the trial judge, I would have considered that factor in the sentencing. I cannot state now, because I do not know at this point, if it would have changed the sentence that I gave. If that factor had been made known to me, I would have considered it in passing sentence."

■■ It is obvious that the trial judge did not consider an element that he believed was important in sentencing this defendant. For this reason the case must be remanded to the Circuit Court of Will County for a new

sentencing hearing wherein the sentences of defendant should be considered in light of this additional factor.

The judgments of conviction entered in the Circuit Court of Will County are affirmed and the case is remanded and the court is directed to conduct a new sentencing hearing.

Affirmed and remanded with directions.

STOUDER and STENGEL, JJ., concur.