(No. 40660.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* FRANK WASHINGTON, Appellant.

*Opinion filed Sept. 24, 1968.—Rehearing denied Nov. 21, 1968.*

Ward, J., took no part.

Starke, Anglin, Savage, Frazin, Stewart & May, of Chicago, (Howard T. Savage, of counsel,) for appellant.

William G. Clark, Attorney General, of Springfield, and John J. Stamos, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane and Howard Levine, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Underwood delivered the opinion of the court:

Defendant Frank Washington was found guilty of unlawful possession of narcotic drugs by a jury in the circuit court of Cook County and sentenced to a term of five to ten years imprisonment. The appellate court unanimously affirmed the defendant's conviction (81 Ill. App. 2d 90), and adhered to its original decision after granting a re-

hearing. (81 Ill. App. 2d 103.) We granted leave to appeal to consider defendant's contentions (1) that his constitutional rights were violated when, on the day set for trial, the judge denied defendant's request for time to obtain different counsel; (2) that the representation provided by his retained counsel amounted to a violation of defendant's constitutional right to counsel because the attorney failed to move to quash a search warrant and suppress the evidence seized thereunder; and (3) that the evidence presented against him failed to establish the identity of the packages introduced in evidence as containing narcotic drugs as the same packages seized by police from the defendant and in the apartment in which he was arrested.

On May 14, 1964, Thomas Henry signed a complaint for the issuance of a search warrant to search the person of Mary Canaday and the premises of her apartment at 6945 South Cornell in Chicago. The complaint set forth that on the preceding day the complainant had seen a large quantity of narcotics and narcotics paraphernalia in the possession of Mary Canaday from whom complainant purchased a package containing narcotic drugs. The relevant portion of the search warrant which was issued pursuant to Henry's complaint reads as follows:

"ON THIS DAY Thomas Henry, COMPLAINANT, HAS SUBSCRIBED and sworn to a complaint for search warrant before me. Upon examination of the complaint I find that it states facts sufficient to show probable cause and I therefore command that the person of Mary Canaday, female/negro and 6945 South Cornell, apartment building, Apt. No. 1-3, Chicago, be searched and the following instrument, articles and things which have been used in the commission of, or which constitute evidence of, the offense of Possession of Narcotics be seized therefrom: a female/negro known as Mary Canaday."

On May 14, three Chicago police officers entered Mary

Canaday's apartment at 6945 South Cornell with the above-quoted search warrant. Defendant Washington opened the apartment door and was given a copy of the search warrant. The defendant and Mary Canaday were arrested, and in a search of the defendant the officers discovered one package containing a white powder which they identified in a field test as heroin, and another package containing a green crushed plant which the officers believed to be marijuana. A third tinfoil package containing a white powder was found in a kitchen drawer in the apartment and a field test of its contents also yielded a positive result for the presence of heroin. The arresting officers testified that during their search of the apartment the defendant stated that everything found in the apartment was his.

On May 15, 1964, the seized substances were examined by a police chemist who identified the three packages in open court as those whose contents he had previously tested and found to contain heroin and marijuana.

Following the defendant's arrest on May 14, 1964, he was indicted on July 31, 1964, and arraigned on August 10, 1964. His privately retained counsel filed his appearance at the defendant's arraignment, and trial was set for September 9, 1964. On October 6, 1964, an order was entered causing the defendant's bond to be forfeited and a warrant was issued for his arrest. On December 17, 1964, both the prosecutor and defense counsel stated that they were ready to proceed to trial, but the defendant engaged in the following colloquy with the court:

"THE DEFENDANT: Your Honor?

THE COURT: Yes.

THE DEFENDANT: Could I have time to change counsels, Your Honor?

THE COURT: No, it's too late.

THE DEFENDANT: I'm not satisfied with counsel.

THE COURT: Not at this stage of the proceedings. Take your seat."

Defendant contends this denial of his request for a continuance to obtain new counsel arbitrarily deprived him of due process and the right to counsel. In view of the fact that this cause came to trial more than four months after defendant's privately retained counsel filed his appearance on behalf of defendant, and in view of the delay already engendered by the defendant's apparent failure to appear in court on the day originally set for trial, we hold that the denial of his request for additional time to. employ new counsel was correct, especially where no particular need for changing counsel is stated. In *People* v. *Mueller,* 2 Ill.2d 311, we noted that while a defendant has the right to discharge his attorney and substitute another, "This right is not so absolute * * * that its exercise may not be denied where it will unduly prejudice the other party or interfere with the administration of justice. To hold otherwise would enable a defendant in a criminal proceeding such as this to delay his trial until he had exhausted his capabilities of acquiring defense counsel and to thus harass and delay effective prosecution of the crime." (2 Ill.2d at 316.) "Absent justifiable basis therefor there is no constitutional right to make a new choice of counsel, with attendant necessity for a continuance because thereof, at the time the trial is scheduled to commence." (*United States* v. *Cozzi* (7th cir.), 354 F.2d 637, 639.) In view of the prior delay caused by defendant in this case, there was ample reason for the trial judge to require the defendant to proceed to trial with counsel whom defendant had previously chosen and with whom no dissatisfaction was expressed until the day set for trial. We find no abuse of trial court discretion in this regard. *Good* v. *United States* (9th cir.), 378 F.2d 934; *People* v. *Loving* (Cal. App.), 65 Cal. Rptr. 425.

Defendant next argues that his attorney in the trial court was incompetent because he failed to move for the suppression of the evidence seized pursuant to the search warrant earlier quoted. It is urged that the warrant which

was issued for the search of Mary Canaday and her apartment was void because it failed to describe the evidence to be seized as required by section 114—12(a)(2) of the Criminal Code (Ill. Rev. Stat. 1965, chap. 38, par. 114—12(a)(2)). However, the omission here resulted from the inaction of counsel of defendant's own choosing, and we have held that the failure of retained counsel to move to suppress illegally seized evidence does not of itself constitute incompetency which would warrant reversal. *People* v. *Green,* 36 Ill.2d 349, 351; *People* v. *Palmer,* 27 Ill.2d 311, 314; see also *People* v. *Underhill,* 38 Ill.2d 245, 254; *People* v. *Robbins,* 88 Ill. App. 2d 447, 453.

An error in judgment alone does not amount to incompetency of counsel (*Green; Palmer*), and the fact that the same warrant involved in this case was quashed upon motion in the case of Mary Canaday does not prove that the representation provided Washington sank so low as to violate his constitutional right to counsel. "[T]he fact that some other lawyer followed a different course in another case, or would have done differently had he been acting as counsel, is no ground for branding the appointed attorney with the opprobrium of ineffectiveness, or infidelity, or incompetency. The practice of law is an art as well as a science. As no two men can be exactly alike in the practice of the profession, it is basically unreasonable to judge an attorney by what another would have done, or says he would have done, in the better light of hindsight. Scott v. United States, (6 Cir., 1964), 334 F.2d 72, cert. den. 379 U.S. 842, 84 S. Ct. 81, 13 L. Ed. 2d 48." (*Williams* v. *Beto* (5th cir.), 354 F.2d 698, 706.) Defendant's trial counsel might have reasoned that a motion to quash would have been futile because the search of the apartment was incident to a lawful arrest of Mary Canaday based on probable cause to believe that she had illegally sold narcotics to Thomas Henry as charged in his complaint. If defense counsel had thus concluded that the search of Mary Canaday's apart-

ment was justified on grounds other than the grant of authority contained in the search warrant, then any defects in the warrant would have been immaterial (*People* v. *Williams,* 36 Ill.2d 505, 509; *People* v. *Brinn,* 32 Ill.2d 232, 241), and at least that package of drugs seized from the kitchen drawer would have been properly admitted against Washington since he had admitted to police ownership of everything found in the apartment.

Where a defendant selects his own attorney this court has held "almost without exception, that the failure of such counsel to exercise care and skill in the trial of the case does not afford a basis for reversing a judgment of conviction." (*People* v. *Morris,* 3 Ill.2d 437, 444.) A standard for determining incompetency which we have often cited (*People* v. *Clark,* 7 Ill.2d 163, 168; *People* v. *Stephens,* 6 Ill.2d 257, 259; *People* v. *Reeves,* 412 Ill. 555, 562-3) was set out by the United States Seventh Circuit Court of Appeals: "If the action of counsel in the presence of the court in the conduct of the trial reduces the trial to a travesty on justice, such conduct might be considered on the proposition that such a trial was a denial of due process. The conduct of counsel in the trial of a case is that of only one of the officers of the court whose duty it is to see that the defendant receives a fair trial. He is only one of the actors in the drama. The best of counsel makes mistakes. His mistakes, although indicative of lack of skill or even incompetency, will not vitiate the trial unless on the whole the representation is of such low caliber as to amount to no representation and to reduce the trial to a farce." (*United States ex rel. Feeley* v. *Ragen* (7th cir.), 166 F.2d 976, 980-1; see also *People* v. *Strader,* 23 Ill.2d 13; *People* v. *Pride,* 16 Ill.2d 82; *Mitchell* v. *People,* 411 Ill. 407; *People* v. *Clifton,* 408 Ill. 475.) The representation of defendant by counsel of his own choosing here was not so low as to amount to a farce. There is no evidence in this case that counsel was unaware of the procedure by which illegally

seized evidence may be challenged (compare, *People* v. *Ibarra*, 34 Cal. Rptr. 863, 386 P.2d 487), nor does the record before us present a picture of defense counsel with an "apparent lack of knowledge of basic criminal procedures" as in *People* v. *De Simone*, 9 Ill.2d 522, where "almost a complete failure" to develop a defense and other conglomerate deficiencies and errors of counsel caused us to reverse the conviction. To the contrary, the ability and perseverance of defendant's attorney in the trial court is attested to by the fact that defendant's counsel in this appeal urges as cause for reversal the same issue of lack of identification of the State's exhibits which was assiduously developed and argued by trial counsel.

The final contention is that the State failed to prove that the packages of narcotics introduced as evidence against defendant at trial were the same packages seized by police from his person and the apartment in which he was arrested. In attempting to show a break in the chain of the State's evidence the defendant relies primarily on *People* v. *Maurice*, 31 Ill.2d 456, and *People* v. *Judkins*, 28 Ill.2d 417. We find, however, that the facts in this case reveal no such break in the chain of evidence against the defendant, but rather the testimony of the arresting officers and the police laboratory chemist sufficiently identified the packets of narcotics admitted into evidence as the same packets that were seized from the defendant and Mary Canaday's apartment. People's exhibits 1 and 2 in this case were small packets which the arresting officers testified were the same packets that had been seized from the defendant's pockets when he was arrested, and People's exhibit 3 is a packet taken from a kitchen drawer in the apartment. Exhibit 1 was identified as containing marijuana by the police chemist who tested the exhibits after they were brought to the crime laboratory. One of the arresting officers, Raymond Kurowski, testified that he took the envelope containing marijuana from defendant's back

pocket, placed it in a second envelope which he initialled and then placed the initialled envelope into a third envelope which he signed with his name and star number, and delivered to the Chicago crime laboratory. On the following day, a police chemist at the laboratory took the sealed envelope with Kurowski's signature from the narcotics' safe, tested the contents of the innermost packet and determined that the substance contained therein was marijuana. The chemist replaced the substance into its original packet and replaced this packet in the two outer envelopes from which he had removed it. The entire set of envelopes was then placed in a new envelope which the chemist signed and this new envelope was identified at trial as People's group exhibit No. 1. A similar procedure was followed with People's exhibits 2 and 3 both containing a white substance field tested by the arresting officers and found to be positive for the presence of heroin; and the findings of the police laboratory chemist, who testified at defendant's trial, confirmed this analysis. We agree with the view of the appellate court that the chain of events from the seizure of the narcotics through their analysis at the crime laboratory to their production at trial was sufficiently proved. The arresting officers identified the People's exhibits as being the same substances which they had seized from the defendant, and the police chemist identified them as being the same substances he had taken from the crime laboratory safe and tested. There is no missing link in the chain of possession in this case as existed in *Maurice,* nor is there an incorrect designation of the substance which the police chemist tested as in *Judkins.*

The First District Appellate Court correctly affirmed the judgment of the circuit court of Cook County, and its judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.