THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT VINCENT HARRIS, Defendant-Appellant.

(No. 12005;

Fourth District—May 21, 1974.

Robert I. Auler, of Auler Law Offices, of Champaign (Robert W. Dodd, Senior Law Student, of counsel), for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Gary Duerkoop, Senior Law Student, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Defendant was indicted, tried and found guilty in a bench trial of knowingly agreeing to unlawfully sell certain narcotic substances, to wit, a quantity of cocaine, and then sold a nonnarcotic substance in violation of section 38 of the Uniform Narcotic Drug·Act (Ill. Rev. Stat. 1969, ch. 38, par. 22—40). Judgment was entered on the verdict and defendant was sentenced to an indeterminate term of 3 to 9 years. The defendant appeals.

Several issues are submitted for review: (1) whether the indictment upon which defendant was convicted was fatally defective; (2) whether the People's Exhibits 1 and 2 were properly admitted into evidence; (3) whether the State established all of the essential elements of the offense in question, specifically that defendant *knowingly* sold a nonnarcotic

substance; (4) and lastly, whether defendant's guilt was proven beyond a reasonable doubt. The defendant asserts that because of these alleged defects his conviction should be reversed, his sentence vacated, and he prays that he be discharged.

Defendant was originally indicted in a seven-count indictment. The last three counts were severed and tried separately. As to Counts I and II, the trial court directed verdicts of acquittal for defendant at the conclusion of the State's case. After a bench trial the trial court found defendant guilty of Count III and entered judgment thereon.

Defendant's bench trial commenced on January 4, 1972. The State called a total of four witnesses: Larry L. Cook, Gerald O. Long, Kenneth Crain Vail and Harold Frank Hanel.

Cook, a special agent for the Illinois Bureau of Investigation, testified that he went to 1400 Briarwood Lane in Champaign on July 8, 1971, at approximately 11:23 P.M. At that address Cook met John Aprile and the defendant. They engaged in a conversation concerning how much "coke" Cook could push. Cook stated that when he used the term "coke" he was referring to cocaine. The defendant purportedly asked whether Cook thought he could gross $9000 from the sale of one-half pound of cocaine. Cook told them that he would have to get in touch with contacts at Carbondale, Edwardsville and Charleston in order to raise that amount of money. Cook was told that he would be contacted in approximately 6 to 8 days. After leaving the residence, Cook then met with Gerald Long and Michael Leahy, the surveillance agents assigned to the case. Agent Long had the residence in question under surveillance the entire time that agent Cook was there.

Cook returned to the same address on July 15, 1971, after he had been contacted. He informed defendant that he was only able to raise $1000 because his contacts in the other part of the State had dried up. Defendant allegedly answered: "That's all right, Larry. We'll show them dudes." Aprile then removed a towel from around a clear plastic bag containing a white powdery substance. He handed the entire bag to Cook who then proceeded to determine the nature of its contents. Cook sampled the substance and after a few moments he experienced a numbing effect on his lips. The plastic bag was purportedly filled with cocaine. Cook then emptied a portion of the bag which was labeled "nature's best" into a plastic container from which he took 66 level teaspoons and emptied them into another plastic bag. In the course of the transaction, defendant asked Cook how much he thought he could gross off the sale of a single spoon. Cook replied $150 per spoon. After concluding the transfer of the substance, he stuffed the bag into another bag bearing a distinctive Avon marking. Cook then counted out $1000 and turned

it over to defendant. Defendant then allegedly told Cook that once the balance of the remaining amount due under the agreement was paid then he would not have to put any money down in the future. "You'll just pay for it as you push it." They gave Cook two weeks to come up with the balance due.

Cook picked up the Avon bag and left the premises. Thereafter, he met with agents Long and Ernst at a prearranged location. These agents had the residence under surveillance during the time that Cook was inside. On July 16, 1971, he carried the contents of the Avon bag contained in a sealed evidence envelope to the Illinois Criminal Bureau lab in Springfield and gave custody of the item to one Weiss, a lab technician. At trial, Cook identified the contents of a sealed evidence envelope, People's Exhibit 1. It contained the white powdery substance that he purchased on July 15, 1971, at 1400 Briarwood Lane from defendant. Cook stated that the purported cocaine had been chemically tested out to be tetracaine.

Cook testified that from the time he received the contents of People's Exhibit 1 until July 16, 1971, when he turned the evidence over to lab technician Weiss, the bag was either in his continuous and exclusive possession or in an evidence vault; and that it was in the same condition the day it was transferred to the lab as it was the day Cook received it from defendant.

In cross-examination Cook stated that after receiving the substance in question, he tested it with a Valtox field kit. Cook stated it reacted positively for cocaine but that many noncocaine substances may give an initial positive reaction to the same test. Defense counsel asked Cook whether the yellow plastic measuring spoon he used to spoon the white powdery substance into his plastic bag was a standard measure. Cook replied that he did not know. He stated that it was a single measuring spoon and that he assumed it was a teaspoon; but that its volume was slightly less than the normal measuring teaspoon. Defense counsel then asked Cook to make a comparison of the quantity of substance that he purchased at 1400 Briarwood Lane and the quantity presented in court, People's Exhibit 1. After further questioning, Cook stated that the amount present in court was fairly close to the amount that he had purchased. Defense counsel then presented Cook with two metal standard measuring spoons, defendant's Exhibits 4 and 5. He examined them and concluded that they were of totally different construction than the spoon used when purchasing the substance in question. Defense counsel asked Cook to make a comparison of the volume contained in the two spoons presented at trial and that used to make the measurements in question. Cook replied that he could not do this without filling them up.

Defense counsel asked agent Cook to take the plastic bag in question and measure out 66 teaspoonsful of powder in the same fashion that he did on July 15, at 1400 Briarwood Lane, with either defendant's Exhibit 4 or 5. The State objected and the trial court upheld the State's objection whereupon the defendant made an offer of proof. The court rejected the offer of proof on the grounds that defendant failed to establish what type of teaspoon was originally used in the transaction in question.

The State next called Gerald Long. Long was a squad leader of the Illinois Bureau of Investigation, Division of Narcotics. He testified that agent Cook was in Long's squad on July 8 and 15, 1971; that on the 8th and 15th of July he had an occasion to be in Champaign County on official business. He was conducting surveillance of 1400 Briarwood Lane, the residence where agent Cook had contacted the defendant concerning the purchase of cocaine. Long testified that he was accompanied by agent Leahy on one occasion and by agent Ernst on another when 1400 Briarwood Lane was put under surveillance. According to Long neither he, Leahy or Ernst entered the premises in question with agent Cook. Long admitted that he could not observe the entrance to the premises on the two dates that Cook entered due to his vantage point, but that he did observe the vehicles that were parked to the west of the residence and that he had seen agent Cook leave his car and go toward the residence and that at a later time he observed Cook returning to his vehicle. Agent Long stated that he gave Cook the funds necessary to purchase the drugs. On cross-examination Long stated that at no time did he search Cook or his car before or after Cook left the residence in question.

Kenneth Vail, a chemist for the Illinois Bureau of Investigation, testified that he received the substance in question from a technician, George Weiss, in a sealed envelope and immediately assigned it with a number. He then performed chemical tests on it and found that no narcotic drug was present. Upon cross-examination, he stated that the substance in question weighed approximately 180 grams upon receipt and that the substance was removed from the vault for testing on two occasions. 3.208 grams were removed from the evidence envelope for transmission to the Federal Narcotics Bureau for chemical analysis.

Harold Hanel testified that he was a forensic chemist for the Federal Bureau of Narcotics and Dangerous Drugs. He stated in that in July 1971 he received a sample from Mr. Vail for chemical testing. When he received the sample it was in a sealed container. He performed certain chemical tests on it and found that the same did not contain any cocaine or any other narcotic drug, but that it was tetracaine, a non-narcotic. He then resealed the substance in the container—People's Exhibit 2—with an "Avery label" that cannot be tampered with without

easy detection; and he retransmitted it to Mr. Vail. He stated that the substance was in his exclusive possession and control or in the evidence vault during the interim.

At the conclusion of the People's case, the state's attorney moved for the admission of People's Exhibits 1 and 2. Defense counsel objected on the grounds that the State failed to lay proper foundation for their admission because the State allegedly did not account for all of the substance which was purchased from defendant; and that the State failed to properly establish a continuous chain of possession. The court overruled the objections.

The defendant called Art Condon, an acquaintance, to testify. He testified that many people he knew including the defendant used the term "coke" to describe all sorts of things that an individual could "get high on". He stated for example that cocaine, novocaine, codeine and tetracaine are all called "coke".

Defendant then called Alan Caspers, a pharmacist, who testified that tetracaine is a local anesthetic which is sold without a prescription. He stated that it has no hallucinogenic effects. He also testified that he estimated the weight of People's Exhibit 1 to be slightly less than half-a-pound, or approximately 40 to 45 teaspoons instead of the purported 66 teaspoons. Defendant made a motion to allow witness Caspers to measure the substance which was denied by the court.

At the conclusion of all the evidence, the trial court found defendant guilty of the charge as set forth in Count III of the indictment.

Defendant submits that it was error for the trial court to refuse to dismiss Count III of the indictment in that the indictment incorrectly set forth the charges upon which he was convicted, and consequently he was unable to properly defend himself.

Defendant was found guilty of violating section 38 of the Uniform Narcotic Drug Act (Ill. Rev. Stat. 1969, ch. 38, par. 22—40), in that he offered to sell a narcotic substance but in fact sold a nonnarcotic. Count III states:

> "* * *: That Robert Harris a/k/a Pudgy late of said County, on the 15th day of July, 1971, at and within the said County of Champaign and State of Illinois, aforesaid, committed the offense of:
>
> ILLEGAL SALE OF NARCOTIC DRUGS
>
> in that he did knowingly agree to unlawfully sell certain narcotic drugs, to-wit: A quantity of Cocaine to Larry L. Cook, Special Agent, Illinois Bureau of Investigation, and did then sell said Larry L. Cook a non-narcotic substance or material, the same not being authorized by the 'Uniform Narcotic Drug Act' of Illinois,

in violation of Chapter 38 Section 22—3 [*sic*] of the Illinois Revised Statutes of 1969, * * *."

The caption of the indictment states: "ILLEGAL SALE OF NARCOTIC DRUGS". Contained in the charging portion of Count III is language asserting that defendant knowingly agreed to sell certain narcotic drugs and then sold a nonnarcotic drug in violation of Illinois Revised Statutes 1969, chapter 38, paragraph 22—3. It is clear that the caption of the indictment was incorrect and the indictment should have cited paragraph 22—40 instead of paragraph 22—3. The question is: did improper caption and the failure to cite the proper statutory provision allegedly violated render the indictment void?

■■ The errors that defendant complains of are of a technical nature. The indictment was phrased in terms of the statute and clearly informed him of the charges pending against him. In *People v. Robinson*, 7 Ill.App. 3d 704, 288 N.E.2d 484, we said:

> "Paragraph 111—3, ch. 38, Ill. Rev. Stat. 1969, with reference to form, requires that a charge shall be in writing and allege the commission of an offense by stating the name of the offense and citing the statutory provision alleged to have been violated. An indictment or information otherwise valid that is defective in that it does not cite the statutory provision alleged to have been violated is not thereby rendered void. [Citation.] Such omission while error does not vitiate the indictment. [Citations.]" (7 Ill. App.3d 704, 706.)

See also *People v. Caldwell*, 55 Ill.2d 152, 304 N.E.2d 292, and *People v. Aprile*, 15 Ill.App.2d 327, 304 N.E.2d 169.

Defendant was not prejudiced in any way by the technical error found in the indictment. Therefore we find defendant's contentions to be without merit.

Defendant next argues that (1) the State failed to establish the proper chain of possession as to People's Exhibits 1 and 2; (2) and the trial court erred in refusing defendant's request to measure the substance in People's Exhibits 1 and 2.

With regard to defendant's first contention that the chain of possession was not adequately established, we cannot agree. Essentially defendant argues that in order for the authorities to properly establish a chain of possession, the state must produce all individuals who came in contact with the exhibits.

The general rule as found in *People v. Anthony*, 28 Ill.2d 65, 190 N.E. 2d 837, is that:

> "In order to establish a foundation for the admission into evidence of the narcotics, the State had the burden of showing a

sufficient continuity of possession of same from the time of the alleged sale to the time the white powder and the testimony regarding its chemical content was offered into evidence so as to negate the possibility of tampering or substitution." (28 Ill.2d 65, 68.)

In the *Anthony* case the defendant had attacked the propriety of the foundation for the admission of certain narcotic drugs that he had allegedly sold to a police officer. In *Anthony* the police officer who received the narcotics from the defendant placed them in a sealed envelope, endorsed his name thereon and delivered it to the crime laboratory. The chemist at the laboratory who made the analysis received the envelope in the sealed condition with no suggestions of tampering or alterations. The individual who received the sealed envelope from the officer and placed it in a locked cabinet, from which it was retrieved by the chemist, was not called to testify by the State. Defendant submitted since the State failed to call this individual it did not establish the necessary foundation for the admission of the narcotics into evidence. The supreme court rejected this argument. The court noted that the techniques employed by the officer and the crime laboratory, which were revealed in their testimony, were sufficient to render admissible the testimony relating to the results of the chemical analysis.

In *People v. Washington,* 41 Ill.2d 16, 241 N.E.2d 425, it was contended that the State failed to prove that the packages of narcotics introduced as evidence against defendant at trial were the same packages seized by police from his person. The court found:

"[T]he facts in this case reveal no such break in the chain of evidence against the defendant, but rather the testimony of the arresting officers and the police laboratory chemist sufficiently identified the packets of narcotics admitted into evidence as the same packets that were seized from the defendant \* \* \*." (41 Ill.2d 16, 23.)

The court went on to say that since the arresting officer was able to identify the People's exhibits as being the same substance which they had seized from the defendant and that the police chemist was able to identify the substances as being the same that he had taken from the criminal laboratory safe and tested, there were no missing links in the chain of possession.

■■ In this case, the record demonstrates that the following chain of custody was established. Agent Cook testified that he put a quantity of white powder into a plastic bag and that he took the plastic bag and stuffed it into an Avon bag; and he later subjected the contents of the plastic bag to a chemical field test. Agent Long stated that after Cook

left the residence at 1400 Briarwood Lane he met Cook, whereupon he observed a plastic bag full of a white powdery substance in Cook's possession. Cook said that he sealed People's Exhibit 1 in an evidence envelope and turned it over to a lab technician at the Illinois Crime Lab in Springfield. Vail, the chemist for the Illinois Bureau of Investigation, testified he received the substance in question from a technician in a sealed evidence envelope and that he assigned a number to the envelope and performed chemical examination on the substance in question. Vail stated that he took a sample of the substance and transmitted it to the Federal Narcotic Bureau for chemical analysis. He returned the balance of the substance in a sealed envelope to agent Cook. Harold Hanel, a forensic chemist for the Federal Bureau of Narcotics, testified he received the sample from Mr. Vail in a sealed condition and then performed chemical tests upon the same. He returned the remainings of the sample, not used in the chemical analysis, to Mr. Vail in a sealed container. Both Vail and Hanel testified that the substance they had custody of was in their exclusive possession and control or in an evidence vault during the interim. Both Cook and Vail identified the substance in question presented at trial as being the same white powdery substance that they had received in connection with the case at bar. The State, in establishing the chain of custody in this case, complied with standards as found in *Anthony* and *Washington*.

The defendant contends that the court erred in refusing to permit the defense request to measure the substance contained in People's Exhibits 1 and 2. The defendant was attempting to show that the combined volume of Exhibits 1 and 2 would not equal 66 teaspoons and that this would establish the possibility of tampering with or alteration of the exhibits in question and vitiate their admissibility.

■■ The court would not permit defendant to measure the substance in People's Exhibits 1 and 2 by using either spoon, defendant's Exhibits 4 or 5, because defendant failed to show that these measuring spoons were of the same construction and volume as that used by Cook in the original transaction. We find no error. Defense counsel failed to establish all of the same conditions that were present when Cook made the initial measuring of the substance in question. Without so doing defendant's experiment lacked relevancy.

Defendant next argues that the State failed to establish that he *knowingly* sold a nonnarcotic and thus failed to prove all the elements of the offense. The State concedes that knowledge that a nonnarcotic substance was being sold is an essential element of the offense; but the State argues by citing *People v. Harris,* 52 Ill.2d 558, 288 N.E.2d 385, that in narcotic cases this knowledge may frequently not be susceptible to direct proof

and can be established by acts, declarations or conduct of the accused from which the inference of knowledge may fairly be drawn.

■■ In *People v. Bell*, 53 Ill.2d 122, 290 N.E.2d 214, the supreme court stated that whether the defendant had the requisite knowledge and possession of the narcotics is a question of fact for the jury to determine. We find the reasoning in *Bell* persuasive and apropos to this case. The record in this case tends to support the finder of facts' conclusions that the defendant acted knowingly. We will not disturb such a finding unless it is clearly erroneous.

. Lastly, the defendant submits that his guilt was not established beyond a reasonable doubt. He argues that the evidence against him rests entirely upon the testimony of special agent Cook. Also, defendant suggests that the State did not show beyond a reasonable doubt that he had used the word "coke" as brought out in special agent Cook's testimony to mean cocaine so as to deceive or defraud the I.B.I. agent.

■■ Essentially we are confronted with a question of the credibility of agent Cook. It is the function of the trier of fact to evaluate the credibility of the witnesses in making its determination of a defendant's guilt or innocence. Its ultimate finding of guilt will be disturbed only when the evidence is so improbable as to leave a reasonable doubt of defendant's guilt. *People v. Curry*, 56 Ill.2d 162, 306 N.E.2d 292.

The testimony of agent Cook, as that of agent Long and the other prosecution witnesses, was positive, credible and uncontradicted. The record illustrates that there is no compelling reason to disbelieve their testimony, especially that of Cook, and that any inconsistencies brought out in cross-examination merely went to the weight and not the admissibility of their testimony. Therefore, we find that the trial court's findings of facts were not manifestly erroneous.

The judgment and sentence of the circuit court of Champaign County are affirmed.

Judgment affirmed.

SMITH, P. J., and TRAPP, J., concur.