THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN ROGERS, Defendant-Appellant.

(No. 12859;

Fourth District—September 17, 1975.

Richard J. Wilson and Richard J. Geddes, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul R. Welch, State's Attorney, of Bloomington (G. Michael Prall and Robert C. Perry, both of Illinois State's Attorneys Association, of counsel) for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

A jury found defendant guilty of the charge of burglary of Elmer's Garage in Bloomington, Illinois. He was sentenced to a term of 2 years 4 months' to 7 years' imprisonment on this conviction, to be served concurrently with a 2- to 6-year sentence on another burglary conviction. Defendant contends that evidence of criminal activity subsequent to that charged in the indictment was improperly introduced against him; that he was not proved guilty beyond a reasonable doubt; that a pair of work shoes belonging to him were improperly admitted as exhibits; and that the sentence is excessive.

Elmer Thomas, owner of Elmer's garage, testified that he closed his garage about 10 o'clock on the evening of January 18, 1974. When he returned to open the station for business at approximately 7:15 a.m. on January 19, 1974, he noticed a window had been broken. His investigation revealed that the station had been burglarized and a TV set, numerous tools, and other items had been damaged or taken during the night. Investigation revealed a refrigerator in the station had also been opened and sandwich ingredients removed from it. Some of the contents of a quart jar of mustard kept in the refrigerator had been spilled on the floor.

John Adam Hull confessed to the burglary of Elmer's Garage, as well as a burglary of the Craft Texaco station in Bloomington on the same date. He testified there were others with him when he broke into these two garages, but he had no recollection as to who was with him because

of intoxication. John Adam Hull's fingerprints were found on the jar of mustard in Elmer's Garage.

Defendant was arrested and tried on a burglary charge for each of the above burglaries. Separate trials on each count were held. The conviction for the Elmer's Garage offense is involved here.

At approximately 5 a.m. on January 19, 1974, Robert Hartnett, an employee of the Ramada Inn in Bloomington, was talking to the night desk clerk of the inn from a phone booth at the corner of Clinton and Locust Streets in Bloomington. At approximately 5:30 a.m., the sound of breaking glass called Hartnett's attention to the Craft Texaco station. The phone booth is located on the corner in front of the Craft station, which sits diagonally on the corner of Clinton and Locust Streets.

Hartnett observed two people near the soda machine in front of the station. One of these persons then entered the station, the other pacing back and fourth in front of it. Hartnett informed the person he was talking to that a break-in was in progress and asked that person to call the police. The police arrived a few minutes later. The person outside the station ran when the police arrived.

Hartnett testified that the area between the telephone booth and the front of the station was fairly well lit for pedestrian purposes, light being supplied by the soda machine lights, display lights shining through the front window of the station, and night lights from businesses located across the intersection. The individual on watch outside the station had walked back and forth in front of it, looking away from the station most of the time. Hartnett observed this individual from all sides and got his best view of the individual when the individual was standing directly in front of the soda machine. At one point in the individual's pacing, he got as close as 50 feet from the telephone booth in which Hartnett was located.

Hartnett made an in-court identification of defendant as being the individual outside of the Craft Texaco station. He had observed this individual for a considerable period of time and was able to give a fairly full description of him, a description that compared quite closely to the appearance of defendant.

Based on Hartnett's description, one of the investigating officers proceeded to the 1500 block of North Fell Street in Bloomington, a location six or seven blocks from the Craft Texaco station. About 15 minutes later, defendant entered the backyard of his North Fell Street residence. The officer apprehended him in the yard.

When brought to police headquarters, defendant had drops of a yellow substance on his shoe top. Officer Linskey of the Bloomington Police Department bent over and touched the substance with his finger.

He described its appearance as being neither new nor old. Linskey testified it was some time after noticing the substance that he formed his opinion as to what it was. Upon reporting for duty his next shift after observing the yellow substance on defendant's shoes, Linskey read the police report of the Elmer's Garage burglary. The report mentioned a jar of mustard as being handled by the suspect. It was at this time that Linskey associated the yellow substance on defendant's shoe with mustard. At trial, Linskey described the substance as follows:

> "Well, it was not real moist like some fresh mustard, and it was not real old and real cakey, like you would get some mustard if it sat out for quite a while. It was in between, it was kind of gritty-like."

Defendant introduced testimony that the shoes he was wearing when arrested were work shoes that he had worn while working at the Portable Elevator Company in Bloomington during the period of June 27, 1973, to August 27, 1973. Part of his duties at Portable Elevator Company was dipping pieces of equipment in yellow paint. This paint, as well as orange and green paint, got on his shoes and clothes in spots. Defendant's mother testified that his shoes still had yellow paint on them on January 18, 1974, as well as having paint on them at the time of the trial. During the State's cross-examination of Mrs. Rogers, the shoes were introduced as People's exhibits. Very little yellow color was to be found on the shoes, only a yellow smudge on one and a speck on the other. Orange and green were prominently displayed. Mrs. Rogers testified that the shoes had been in her sole possession since they had been obtained from the jail in April of 1974. She could not say whether or not there had been yellow paint on the shoes at that time.

The conviction under review here involves a burglary of Elmer's Garage. However, all but a few pages of testimony presented to the jury dealt with a burglary of the Craft Texaco station. This evidence was introduced by the State to show defendant's presence at the Craft station so that he could be tied in with John Adam Hull, an admitted burglar of both Elmer's Garage and the Craft station. The only evidence directly implicating defendant in the Elmer's Garage burglary concerned the spilled mustard in that station and the presence of a yellow substance on defendant's shoes a few hours later. Defendant contends this massive introduction of evidence of a subsequent criminal offense denied him a fair trial by prejudicing him in the eyes of the jury. Objections were made to the introduction of this testimony both before trial and at trial. The jury was given IPI—Criminal 3.14 which told them that the evidence of the crime other than that charged in the indictment

had been received solely on the issue of defendant's presence and design and was to be considered only for that limited purpose.

■■ While some cases have distinguished between crimes committed prior to and those committed subsequent to the particular offense charged (*People v. Hill*, 98 Ill.App.2d 352, 240 N.E.2d 801; *People v. Allen*, 1 Ill.App.3d 197, 272 N.E.2d 296), Mr. Justice Goldenhersh discussed the issue of evidence of other crimes and their admissibility as follows in *People v. Stadtman*, 59 Ill.2d 229, 319 N.E.2d 813:

> "The general rule is that evidence of crimes other than those charged is inadmissible. (*People v. Peto*, 38 Ill.2d 45.) The exception to this rule applies when the evidence is independently relevant to prove motive, intent, identity or some other issue connected with the crime charged. (*People v. Lehman*, 5 Ill.2d 337.)" (59 Ill.2d 229, 231, 319 N.E.2d 813, 814.)

Citing *People v. Tranowski*, 20 Ill.2d 1, 169 N.E.2d 347, the First District Appellate Court in *People v. Whitley*, 18 Ill.App.3d 995, 311 N.E.2d 282, said that resolution of the conflict between the rule and the corollary depends on whether the evidence of other crimes is so closely connected with the main issue that it tends to prove the accused guilty of the crime for which he is being tried.

Defendant concedes that evidence of subsequent criminal activity may be admitted in some cases, but claims that Illinois courts should adopt a rule that admission of such evidence is up to the discretion of the trial court. He contends the trial court should consider the prejudicial impact of such evidence before admitting it. Illinois case law does recognize such a rule. Professor McCormick, who advocated such a rule in his Handbook of the Law of Evidence, ch. 17, § 190 (Cleary ed. 1972), is paraphrased with approval by the court in *People v. Butler*, 133 Ill.App. 2d 299, 273 N.E.2d 37. In *People v. Henderson*, 18 Ill.App.3d 457, 309 N.E.2d 242, it is said that it is left to the sound discretion of the trial judge to weigh the probative value of the evidence of other crime as against its prejudicial effects.

The lengthy evidence of the Craft Texaco station burglary tended to show defendant's presence and identity at the Elmer's Garage burglary. John Adam Hull testified for the State that he had an accomplice in both burglaries. The State introduced the evidence of "mustard" on defendant's shoes to show that he was this accomplice. The extensive evidence of the Craft Texaco burglary was necessary in order to connect the man apprehended on Fell Street with the individual in front of the Craft Texaco station. The evidence of the Craft burglary was not introduced as an attempt to show that defendant was a "bad man." It was

evidence that was relative to the issue of identity of John Adam Hull's accomplices in the burglaries.

Defendant contends that he was not proved guilty of burglary beyond a reasonable doubt. He attacks the description given to the police by witness Hartnett, claiming it is greatly in conflict with his actual appearance. However, a review of the evidence indicates that there was no great disparity. Hartnett had an opportunity to watch the person outside the Craft station for a considerable amount of time under lighting conditions that were sufficient to permit him to adequately describe what he observed. Additionally, Hartnett was certain of his in-court identification.

Defendant further grounds his reasonable doubt issue on officer Linskey's identification of the yellow substance on defendant's shoes as mustard. After describing the substance, Linskey stated his opinion that based on his experience with mustard, the yellow substance was mustard. However, no chemical tests were made to precisely determine what the substance was, nor did Linskey do anything other than observe and touch the substance. He did not taste it or smell it or take a sample for future evidence.

■■ It is the function of the trier of fact to evaluate the credibility of witnesses in making its determination of defendant's guilt or innocence. A finding of guilt will be disturbed only when the evidence is so improbable as to leave a reasonable doubt of that guilt. (*People v. Curry*, 56 Ill.2d 162, 306 N.E.2d 292; *People v. Harris*, 19 Ill.App.3d 531, 311 N.E.2d 789.) Officer Linskey's observations and conclusions that the substance was mustard are not patently unbelievable. The evidence presented against defendant here is not so inclusive and improbable as to enable us to say he was not proved guilty beyond a reasonable doubt.

Defendant's next issue concerns the admission of the shoes. He contends error was committed in their admission because there was no indication of continuous custody of the shoes and there was substantial evidence that they were not in the similar condition as they were at the time of the offense.

■■ Defendant's counsel failed to object at trial to the admission of the shoes. Regardless, defendant contends that this is a proper case in which the general waiver rule should not be applied and that under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 615(a)), we should recognize the admission of the shoes as plain error. The rule was meant to be a means of ameliorating the harshness of the strict application of the general waiver rule, and was to be used to take notice of errors appearing upon the record which deprived the accused of substantial means of enjoying a fair and impartial trial. (*People v. Kil-*

*lebrew*, 55 Ill.2d 337, 303 N.E.2d 377.) The rule is also to be used where the evidence is closely balanced in criminal cases. We do not believe that any error in admission of the shoes was of such magnitude as to meet the test required by *Killebrew*.

██ Finally, defendant contends that the sentence of 2 years 4 months' to 7 years' imprisonment on this burglary conviction was excessive. He was sentenced to 2 to 6 years' imprisonment for his part in the Craft Texaco station burglary, both sentences to be served concurrently. The court noted that it felt the conviction for the Elmer's Garage burglary justified an additional sentence. Defendant had asked for identical 2- to 6-year sentences on each burglary conviction. Defendant had a prior burglary conviction and was on parole at the time he committed the two burglaries involved here. The additional sentence for the Elmer's Garage burglary is not unreasonable. The familiar standard set forth for appellate courts in reviewing sentences in *People v. Taylor*, 33 Ill.2d 417, 424, 211 N.E.2d 673, does not require a reduction of defendant's sentence.

For the reasons stated, the judgment of the circuit court of McLean County is affirmed.

Affirmed.

SIMKINS, P. J., and GREEN, J., concur.