THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVEN
IRELAND, Defendant-Appellant.

Third District   No. 73-257

Opinion filed May 20, 1976.—Rehearing denied June 17, 1976.

Michael D. Block, of Joliet, for appellant.

Martin Rudman, State's Attorney, of Joliet (Michael Neese, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Appellant Steven Ireland was indicted for possession of over 500 grams of cannabis with intent to deliver (Ill. Rev. Stat. 1975, ch. 56½, par. 705(e)), and also for possession of less than 200 grams of amphetamines (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(b)). In a jury trial in Will County he was acquitted on both of the charges referred to but was found guilty of a lesser included offense of possession of over 500 grams of cannabis (par. 704(e)).

On appeal in this court, defendant Ireland attacks the court's rulings on certain evidentiary matters, the instructions given or denied, the denial of a motion to suppress, and the sufficiency of evidence to support the conviction. He also contends that the sentence of 1 to 3 years in the penitentiary is excessive.

From the record it appears that on December 15, 1972, law enforcement officers executed a search warrant at the defendant's trailer home near Monee, Illinois. The warrant was directed toward the person of Kathy Szabo (Ireland's wife) and toward the trailer premises insofar as cannabis or controlled substances and related paraphernalia might be found. Ireland was at home when the officers arrived. They discovered over 100 pounds (over 45 kilograms) of marijuana in the trailer, and also paraphernalia and 30 pills containing amphetamines. Most of the cannabis was found in plastic bags in the Ireland bedroom and in the second bedroom which was used for storage. Some was found in the kitchen and the dining room, and the pills were found in the bathroom.

At the trial the defendant testified that he and his wife were married on May 17, 1972, and that they were financially well off at the beginning of

the marriage because of a gift from the parents of his wife of $28,500. After they had invested in some land and the trailer, they soon ended up without a cash reserve, although they did make ends meet. Ireland indicated that his wife had come from a wealthy family and was accustomed to having plenty of money. As the financial picture of the couple darkened, defendant's wife told him, in November 1972, she was considering selling marijuana. He told her he was against the idea and she apparently acquiesced in his wishes. Defendant, however, came home from work one day about two weeks before his arrest to find some 200 pounds of marijuana in the trailer. He questioned his wife about it and she became very upset and threatened to go to England alone as she had been planning to do before they met and were married. Ireland then apparently relented and did nothing further. Defendant testified that he did not exercise any control over the marijuana. He said that during the 2-week period following his wife's acquisition of the marijuana, a person named John Benatty visited his wife at the trailer 8 or 10 times. He was also shown State's exhibit 35, which purported to be a list of prices for marijuana, which bore the name "John," and said it was in his wife's handwriting.

At the trial, the defense offered to show by testimony of the defendant's parents, that Kathy Ireland made two separate calls to their home, and talked to each of them within two or three hours after the defendant's arrest. Each would have testified that Kathy Ireland sounded emotionally distraught and blamed herself for her husband's arrest. She admitted to her in-laws that she alone had obtained the marijuana and had been selling it. The defense unsuccessfully sought to have this testimony admitted as a "declaration against penal interest" exception to the hearsay rule. (*People v. Craven* (1973), 54 Ill. 2d 419, 299 N.E.2d 1.) The court, however, excluded such testimony on objection of the State. At the time the cause was submitted to the jury, the State relied on the fact that marijuana was found in the trailer of defendant and his wife and defendant Ireland relied on the evidence that it was in possession of his wife and not of defendant Ireland. The jury deliberated nine hours before acquitting Ireland on both charges but finding him guilty of the lesser included offense of mere possession.

From an analysis of the evidence and testimony, it appears that the jury's apparent difficulty in reaching a verdict promptly, indicated that this was a very close case from standpoint of liability. It was thus imperative that the jury be correctly instructed as to the applicable law regarding the criminal possession of drugs.

The jury was given Illinois Pattern Instruction (IPI) Criminal No. 4.15, at the request of the State and over defendant's objection. Such instruction read:

"Possession is a voluntary act if the offender knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have been able to terminate his possession."

While there is no IPI instruction defining "possession" specifically, the defense offered one defining possession as "immediate and exclusive control" (*People v. Nettles* (1961), 23 Ill. 2d 306, 307, 178 N.E.2d 361; *People v. Embry* (1960), 20 Ill. 2d 331, 334, 169 N.E.2d 767). Such instruction was rejected by the court as being incomplete. The trial court also refused to give IPI Criminal No. 4.14, when requested by the defendant. That instruction provides that "A material element of every crime is a voluntary act * * *." The defense insisted that it should be included with No. 4.15 to show that voluntariness is a separate element of the crime.

■■ It, therefore, resulted in having only one relevant instruction concerning possession, IPI Criminal No. 4.15, which simply defines when possession is voluntary. The issue in the cause before us is not whether defendant's possession was voluntary in the first instance but whether he had any possession at all. We agree with the contention of the defendant that the instruction, given alone, could induce the jury to believe that Ireland's mere knowledge of the presence of marijuana in his trailer "for a sufficient time" would make it voluntary and thus possession under the law. The prosecutor actually added to this confusion when he stated, in his closing argument:

"The Judge will also instruct you on possession and that it is a voluntary act. If the offender knowingly procured or received the thing possessed or was aware of his control thereof for a sufficient time to have been able to terminate his possession, and that is Steven Ireland. There's no doubt under the law that he possessed it. Two weeks before he was arrested he knew it was there, he never did anything. Could he have if he was innocent?"

The argument of the prosecutor could have confused the jury further in thinking that the presence of marijuana in Ireland's trailer was equivalent, in law, to its being under his control, and that therefore his mere awareness of the marijuana being there was enough to convict him. Knowledge alone is not the equivalent of possession. (*People v. Jackson* (1961), 23 Ill. 2d 360, 363-64, 178 N.E.2d 320; *People v. Howard* (4th Dist. 1975), 29 Ill. App. 3d 387, 388, 330 N.E.2d 262.) While the law raises an inference of control when narcotics are found on the premises occupied by a defendant, absent facts and circumstances which indicate otherwise (*People v. Nettles* (1961), 23 Ill. 2d 306, 308-09), it is only a permissible inference, not an automatic and absolute result. Defendant's presence on the premises does not significantly add to the State's case. (*People v. Howard* (4th Dist. 1975), 29 Ill. App. 3d 387, 389; *People v. Heerwagen*

(3d Dist. 1975), 30 Ill. App. 3d 144, 145, 332 N.E.2d 136; *People v. Kissinger* (3d Dist. 1975), 26 Ill. App. 3d 260, 263, 325 N.E.2d 28.) One recent case even concludes that the presence of narcotics in premises occupied jointly by a defendant and one or more other persons, and to which even others have access, is insufficient to convict defendant for possession thereof, absent some other evidence tying the defendant to the drugs. (*People v. Wolski* (1st Dist. 1975), 27 Ill. App. 3d 526, 327 N.E.2d 308.) A similar rule is in effect in a number of jurisdictions (see the cases collected at Annot., 56 A.L.R.3d 948, §§4, 13 (1974)). In the case before us there was nothing in the way of statements, suspicious behavior, previous sales, or use, which would tie Steven Ireland to the marijuana. In a situation such as we have in the present case, where a very tenuous case is presented by the State on the issue of possession, possession becomes a question of fact to be determined by the jury. (*People v. Bell* (1972), 53 Ill. 2d 122, 126-27, 290 N.E.2d 214 (1973); *People v. Harris* (4th Dist. 1974), 19 Ill. App. 3d 531, 540, 311 N.E.2d 789.) As we have noted previously under such circumstances it is essential that the jury be accurately instructed as to the law.

With IPI Criminal No. 4.15, defining when possession is voluntary, followed by the argument of the prosecutor, the jury could easily be misled with only IPI Criminal No. 4.15 given alone. If No. 4.14, which was requested by defendant, and which points out that voluntariness is a separate element of the crime, is given in conjunction with No. 4.15, this confusion may have been ameliorated or dissipated. Under a set of facts such as we have before us, IPI Criminal No. 4.15 is apparently designed to cover a situation where defendant contends that his possession of the narcotics is involuntary, and where there is no question as to possession. This was not true in the instant case, since defendant completely denied possession, though admitting knowledge of the presence of the marijuana in the trailer. We accordingly conclude that the instruction should not have been given, at least not without IPI Criminal No. 4.14, as an accompanying instruction. *People v. Sullivan* (2d Dist. 1972), 7 Ill. App. 3d 417, 422, 287 N.E.2d 513.

■■■ Obviously the jury should have been instructed on the elements of possession. We do not believe the instruction tendered by defendant was sufficient for this test. The doctrine of constructive possession would place narcotics found in a safe deposit box in the possession of the person who had access to the box. Likewise, if the contraband is found in any other location over which the person in question exerts control. "Exclusive" control does not exclude joint control and therefore joint possession. (See *People v. Embry* (1960), 20 Ill. 2d 331, 335-36.) An instruction on possession should be tailored to meet these principles.

While we are remanding this case for a new trial because of a deficiency in instructions, we feel it desirable to comment on another issue which might again arise in this cause.

Ireland attacked the court's refusal to admit the testimony of his parents concerning the phone calls to his wife. While he admits the hearsay nature of this testimony, he argues that it should be admitted under the "declaration against penal interest" exception to the hearsay rule. Admission of hearsay testimony of this character (contrary to overwhelming authority which would deny admission) was allowed in *People v. Lettrich* (1952), 413 Ill. 172, 178-79, 108 N.E.2d 488, in what the Illinois Supreme Court later called "compelling circumstances." (*People v. Craven* (1973), 54 Ill. 2d 419, 427, 299 N.E.2d 1.) In the *Craven* case, denying admission to testimony concerning a third-party confession to the murder with which Craven was charged, the court referred with approval to the approach taken in *Chambers v. Mississippi* (1973), 410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 311-12, 93 S. Ct. 1038.

■■ ■ In the *Chambers v. Mississippi* case, the Supreme Court suggested that a declaration against penal interests tending to exculpate the defendant could be testified to by a witness to the declaration where:

(1) it was made to a close acquaintance shortly after the crime occurred;

(2) it was corroborated by other evidence in the case;

(3) it was self-incriminatory and against the declarant's interest; and

(4) the declarant is available for cross-examination by the State.

In the instant case, the first three factors appear to be met. If Kathy Szabo Ireland made the statements in question to her in-laws just two or three hours after the defendant was arrested, it certainly may have been incriminatory, since she admitted that the marijuana belonged entirely to her. There was also evidence tending to corroborate her story. Defendant's testimony showed that she was in sole possession of the cannabis. The paraphernalia was found in a ladies' purse. The search warrant was directed to the person of Kathy Szabo, not to the defendant. The complaint for the search warrant filed by the State showed that the informer, on whose tip the police acted, had purchased drugs twice from Kathy Ireland. On one occasion, the informer related, a male had been present whom Mrs. Ireland introduced as "my husband, Jim." There is nothing to indicate whether this was in fact the defendant, or the mysterious John Benatty, or perhaps someone else.

The only difficulty, which would be presented as to the admissibility of testimony regarding Kathy Szabo Ireland's declaration against penal interest, is that the State was effectively prevented from cross-examining her since she invoked the Fifth Amendment to all questions at the trial.

Whether or not that problem should bar admission of the testimony is one which could be solved, the defendant notes, by granting Kathy Szabo immunity. While her refusal to answer questions should not allow defendant to escape conviction on a charge if he is guilty, neither should it result in the conviction of a man who is not guilty. The important consideration, in the last analysis, is the trustworthiness of the testimony of the parties.

For the reasons stated, the judgment of the Will County Circuit Court is reversed and the cause is remanded for a new trial.

Reversed and remanded.

STENGEL and BARRY, JJ., concur.