THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES THOMAS, Defendant-Appellant.

Second District    No. 80-95

Opinion filed May 8, 1981.

22

Mary Robinson and Elizabeth Clarke, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant was convicted of armed robbery after a jury trial and sentenced to six years' imprisonment. He appeals, contending that he was denied effective assistance of counsel.

Essentially, defendant relies on the failure of his retained counsel to impeach the sole occurrence witness by reference to her inconsistent testimony at a preliminary hearing concerning the identification of defendant.

The armed robbery occurred on June 20, 1978, at One-Stop Pharmacy in Rockford. In his opening statement to the jury, the prosecutor stated that he would prove that on June 20 that two men, one of whom was the defendant, entered the pharmacy and went to the rear register to find out if there were money orders kept there; that upon learning that there were none they left and two different persons came in and robbed only the front register.

The manager of the pharmacy, Willie Bryant, testified that the defendant was not one of the two men who inquired about the money orders at the rear register. This was shortly after 4 p.m. Phyllis Kirkwood at trial testified that she was working at the front register at approximately 4:25 p.m. when a man came in and asked for a pack of cigarettes; after she got the cigarettes she turned around and saw another man standing in front of her with a gun pointing at her asking for the drawer. When she said she didn't know how to take it out he threatened to kill her and

reached over and took the drawer out himself. She also testified that about two minutes prior to that occurrence she observed two men enter and go to the back of the store. Those two men walked past the front register on the way out of the store, and she recalled saying "Hello" to them.

She was then asked if any of the four people she had mentioned were in the courtroom and she pointed to the defendant. The following colloquy then occurred:

"[The prosecutor]: May the record reflect, Your Honor, that the witness has pointed to the Defendant Thomas?

The court: The record may so show.

Q [by the prosecutor]: To which group did he belong? The—the two that came in first or the two that came in second?

A: The two that came in second.

Q: Which one was he?

A: I believe the man—he was the man who bought the Kools from me."

Two police officers testified to an oral statement made by the defendant. The testimony was that defendant and a David McLaurin planned the robbery of the pharmacy, went into the store to ask about money orders, and left; they then got a shot gun which they gave to Gregory Gage; whereupon Gage and a Johnny Bryant robbed the pharmacy while defendant and McLaurin sat in the car; and that after the robbery the four men met and divided the proceeds.

Defendant presented a number of alibi witnesses and also testified in his own behalf. He remembered having a conversation with the police officers but denied saying that he was in any way involved in the robbery.

A preliminary hearing in the case had been held on July 14, 1978, at which defendant was represented by an assistant public defender. At that hearing Phyllis Kirkwood testified concerning the robbery after which the following exchange took place:

"Q: Now, I'm going to ask you to look around the courtroom. Do you see the man that had the shotgun here in the courtroom?

A. Yes.

Q. Point to him and describe what he's wearing right now.

A. A yellow jump suit.

Q. Point to him for the Court, please.

A. Right over there. (indicating)

[The prosecutor]: For the record she is indicating—whom is that, I get confused—Judge, I ask that he be ordered to identify himself.

The court: She is pointing to the man in the yellow jump suit.

The defendant: Gregory Gage.

[The prosecutor]: All right. May the record reflect indicate that she has identified Gregory Gage, your Honor?

The court: If that's who that is.

The prosecutor: He said it was Gregory Gage.

Q. All right, do you see the man that came in and asked for the cigarettes and who left with Gregory Gage?

A. Yes.

Q. Point to him and describe what he's wearing.

A. An orange jump suit and he's sitting next to the man in the brown suit.

[The prosecutor]: Indicating for the record the defendant, Johnny Bryant."

The record indicates that Gage, Bryant, McLaurin, and defendant were all present at the hearing. Phyllis Kirkwood did not mention the two men who went to the rear of the store prior to the robbery.

The defendant argues that the failure of defense counsel to impeach the sole occurrence witness, Phyllis Kirkwood, with her contradictory testimony at the preliminary hearing denied the defendant the effective assistance of counsel. He notes also that the only other proof presented at trial to link the defendant with the offense was the testimony by the police officers that Thomas planned the robbery and participated in the proceeds; but that this testimony was contradicted by Willie Bryant, the manager of the pharmacy, in his testimony that neither of the two men who asked him about the money orders were present in the courtroom at trial, so that absent the testimony of Kirkwood the evidence of the State was insufficient to support the conviction.

It was obviously the theory of the prosecution, as disclosed by the opening argument, that the proof would show that two men, one of whom was the defendant, entered the pharmacy and went to the rear register to find out if the money orders were kept there and thereafter sent in the other two to commit the robbery. Only the officers' testimony related to defendant's statement supported that theory however. The manager did not identify defendant as the one who went to the rear register to inquire about the money orders; and, exactly contrary to her previous testimony at the preliminary hearing, Phyllis Kirkwood testified at trial that the defendant was next to the man with the gun at the front register when the robbery was committed.

The State agrees that the trial counsel could have impeached Phyllis Kirkwood with her preliminary hearing testimony but argues that the failure to do so did not constitute incompetency. The State reasons that counsel most likely realized that if he brought up the matter of Kirkwood's misidentification, the witness would have repudiated her earlier testimony and strongly reaffirmed her testimony just given on direct

examination that the defendant was the individual who ordered the cigarettes.

■■ A great burden is placed upon defendant to demonstrate that retained counsel was ineffective. The representation must be of such low caliber as to amount to no representation at all or reduce the proceedings to a sham or farce. (*People v. Murphy* (1978), 72 Ill. 2d 421, 436.) Errors in judgment or trial strategy do not establish incompetency. *People v. Torres* (1973), 54 Ill. 2d 384, 392.

A close reading of the preliminary hearing transcript indicates that it might not have been a highly successful tool for impeachment. The purported identifications of Gage and Bryant rested on Gage's unsworn self-identification and the prosecutor's unsworn identification of Bryant. The prosecutor had remarked earlier, in seeking to have the record reflect the identification, "I get confused."

■■ It is conceivable that defense counsel may have judged that impeachment with the preliminary hearing identifications would have been of little value. For example, Kirkwood might have insisted that the person referred to at the preliminary hearing as Johnny Bryant was actually James Thomas. The prosecutor may also have acknowledged at trial that he erroneously referred to that individual as Johnny Bryant. At any rate, we are satisfied that the decision to forego impeachment was a matter of trial strategy and will not through hindsight brand the strategic judgment incompetent. *People v. Washington* (1968), 41 Ill. 2d 16, 21.

We further note that defense counsel conducted a vigorous and skillful defense. He capably cross-examined Kirkwood as to the circumstances surrounding her observation of defendant during the commission of the robbery. He also cross-examined the police officers as to defendant's alleged oral confession and presented an alibi defense. Defendant received competent representation throughout the proceedings, and we do not believe that the omitted impeachment would have changed the result.

The cases cited by defendant are not in point. In *People v. Brinson* (1980), 80 Ill. App. 3d 388, defense counsel utterly failed to attempt to suppress a confession and suggestive in-court identification. In *People v. Jackson* (1968), 96 Ill. App. 2d 99, the court found several glaring deficiencies in defense counsel's handling of the case, indicating his failure to understand basic rules of criminal procedure. (*Jackson*, at 104.) And in *People v. Schulman* (1921), 299 Ill. 125, 128-29, defendant was denied important evidence due to his counsel's ignorance of the rules of evidence.

■■ Defendant also argues that trial counsel was incompetent for failing to highlight the inconsistencies in the State's case during closing argument. It is true that defendant's alleged confession that he was one of the first pair

who entered the store was at odds with Kirkwood's identification of him as one of the second pair. However, in either version defendant could be found criminally responsible. Defense counsel may have decided that an attack upon the credibility of the officers and the accuracy of Kirkwood's identification would be more fruitful than pointing out the inconsistency. Once again, this court cannot conclude that counsel was ineffective even though others may have acted differently. See *People v. Washington* (1968), 41 Ill. 2d 16, 21.

The judgment is therefore affirmed.

Affirmed.

VAN DEUSEN and NASH, JJ., concur.